**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HOUND PARTNERS OFFSHORE FUND, LP, HOUND PARTNERS LONG MASTER, LP, and HOUND PARTNERS CONCENTRATED MASTER, LP, <br><br> Plaintiffs, <br><br> v. <br><br> VALEANT PHARMACEUTICALS INTERNATIONAL, INC., J. MICHAEL PEARSON, HOWARD B. SCHILLER, ROBERT L. ROSIELLO, DEBORAH JORN, ARI S. KELLEN, TANYA CARRO, ROBERT A. INGRAM, RONALD H. FARMER, COLLEEN GOGGINS, THEO MELAS-KYRIAZI, ANDERS LONNER, ROBERT N. POWER, NORMA PROVENCIO, KATHARINE B. STEVENSON, PRICEWATERHOUSECOOPERS LLP, DEUTSCHE BANK SECURITIES INC., HSBC SECURITIES (USA) INC., MUFG SECURITIES AMERICAS INC. f/k/a MITSUBISHI UFJ SECURITIES (USA) INC., DNB MARKETS INC., BARCLAYS CAPITAL, INC., MORGAN STANLEY & CO. LLC, RBC CAPITAL MARKETS, LLC, and SUNTRUST ROBINSON HUMPHREY, INC. <br><br> Defendants. | Civil Action No. 1:18-cv-00076 |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO TRANSFER**

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ..................................................................................................... 3

    A.    The District Of New Jersey Actions Begin In October 2015 ...................................4

    B.    Substantial Dispositive Motion Practice Has Occurred In The District Of
New Jersey ..............................................................................................................5

    C.    Discovery Has Proceeded In The District Of New Jersey ......................................6

    D.    Partial Stay Of New Jersey Proceedings Pending Related Criminal Trial ..............7

    E.    Plaintiffs' Substantively Identical Factual Allegations And Legal Theories ..........9

ARGUMENT ........................................................................................................ 10

I.    This Case Could Properly Be Filed In The District Of New Jersey, Where
Twenty-Six Substantively Identical Securities Cases Are Pending ................................. 11

II.    Transfer Is Efficient And In The Interest Of Justice .......................................................... 11

    A.    Judge Shipp Is Actively Managing Twenty-Six Related Securities Cases ............11

    B.    This Opt-Out Action Is Substantively Identical To The District Of New
Jersey Actions ......................................................................................................13

    C.    The District Of New Jersey Has Expended Substantial Resources ......................14

III.    All Additional Factors Weigh In Favor Of Defendants .................................................... 15

    A.    Transfer to The District Of New Jersey Will Be More Convenient For The
Witnesses ..............................................................................................................16

    B.    The District Of New Jersey Is More Convenient For The Parties ........................17

    C.    The Relevant Documents Are In New Jersey ......................................................17

    D.    The Facts Alleged In The Complaint Occurred In New Jersey ............................18

    E.    Unwilling Witnesses Are More Likely To Be Located Within 100 Miles of
The District Of New Jersey...................................................................................20

    F.    Plaintiffs Are Cayman Hedge Funds Worth Billions Of Dollars; They Can
Afford To Litigate In New Jersey ........................................................................21

    G.    The District Of New Jersey Is Most Familiar With The New Jersey State
Law Claims ..........................................................................................................21

    H.    Plaintiffs' Choice Of Forum Does Not Warrant Deference.................................22

CONCLUSION..................................................................................................... 22

# TABLE OF AUTHORITIES

Page(s)

## Cases

*APA Excelsior III L.P. v. Premiere Techs., Inc.*,
  49 F. Supp. 2d 664 (S.D.N.Y. 1999) ................................................ 12, 14

*Azari v. B&H Photo Video*,
  No. Civ. 06-7825, 2007 WL 13101 (S.D.N.Y. Jan. 3, 2007) .......................... 10, 22

*Berman v. Informix Corp.*,
  30 F. Supp. 2d 653 (S.D.N.Y. 1998) ................................................ passim

*Cont'l Grain Co. v. The FBL-585*,
  364 U.S. 19 (1960) ................................................................ 13

*Discovery Global Citizens Master Fund, Ltd., v. Valeant Pharm. Int'l, Inc.*,
  No. Civ. 16-7321, 2018 WL 406046 (D.N.J. Jan. 12, 2018) ......................... 6

*Erickson v. Corinthian Colleges, Inc.*,
  No. Civ. 13-4308, 2013 WL 5493162 (S.D.N.Y. Oct. 1, 2013) ....................... 20

*Ferens v. John Deere Co.*,
  494 U.S. 516 (1990) ............................................................... 3

*Goggins v. Alliance Capital Mgmt., L.P.*,
  279 F. Supp. 2d 228 (S.D.N.Y. 2003) ..................................... 12, 16, 17, 18

*In re Anadarko Petroleum Corp.*,
  No. Civ. 10-5894, 2012 WL 12894796 (S.D.N.Y. Mar. 19, 2012) .................... 11

*In re AtheroGenics Sec. Litig.*,
  No. Civ. 05-61, 2006 WL 851708 (S.D.N.Y. Mar. 31, 2006) ....................... 18

*In re CenturyLink, Inc. Sec. Litig.*,
  No. Civ. 13-3839, 2014 WL 1089116 (S.D.N.Y. Mar. 18, 2014) .................... 12

*In re ChannelAdvisorCorp. Sec. Litig.*,
  No. Civ. 15-506, 2015 WL 4064625 (S.D.N.Y. July 2, 2015) ...................... 18

*In re Collins & Aikman Corp. Sec. Litig.*,
  438 F. Supp. 2d 392 (S.D.N.Y. 2006) ....................................... 17, 18

*In re Global Cash Access Holdings, Inc. Sec. Litig.*,
  No. Civ. 08-3516, 2008 WL 4344531 (S.D.N.Y. Sept. 18, 2008) ............... 16, 17, 18

*In re Nematron Corp. Sec. Litig.*,
    30 F. Supp. 2d 397 (S.D.N.Y. 1998) ...................................................................... 17

*In re Valeant Pharm. Int'l, Inc. Sec. Litig.*,
    No. Civ. 15-7658, 2017 WL 1658822 (D.N.J. Apr. 28, 2017) ................................... 5

*In re Valeant Pharm. Int'l, Inc. Third-Party Payor Litig.*,
    No. Civ. 16-3087, 2017 WL 3429342 (D.N.J. Aug. 9, 2017) ................................... 8

*In re Worldcom, Inc. Sec. Litig.*,
    No. Civ. 02-3288, 2003 WL 21219037 (S.D.N.Y. May 22, 2003) ............... 2, 14, 16

*Int'l Bus. Machines Corp. v. Fair Isaac Corp.*,
    No. Civ. 05-10296, 2006 WL 726034 (S.D.N.Y. Mar. 23, 2006) ........................... 21

*JetBlue Airways Corp. v. Helferich Patent Licensing, LLC*,
    960 F. Supp. 2d 383 (E.D.N.Y. 2013) .................................................................. 12

*Kreisner v. Hilton Hotel Corp.*,
    468 F. Supp. 176 (E.D.N.Y. 1979) ...................................................................... 21

*Langley Partners, L.P. v. Tripath Tech., Inc.*,
    No. Civ. 05-5255, 2005 WL 2482527 (S.D.N.Y. Oct. 6, 2005) ............................... 13

*Levy v. Welsh*,
    No. Civ. 12-2056, 2013 WL 1149152 (E.D.N.Y. Mar. 19, 2013) ........................... 15

*Maverick Fund, L.D.C. v. Lender Processing Servs., Inc.*,
    No. Civ. 13-5474, 2013 WL 6467889 (S.D.N.Y. Dec. 10, 2013) ..................... passim

*Ruiz ex rel. E.R. v. United States*,
    No. Civ. 1241, 2014 WL 4662241 (E.D.N.Y. Sept. 18, 2014) ............................... 21

*SEC v. Kearns*,
    No. Civ. 09-2296, 2009 WL 2030235 (S.D.N.Y. July 14, 2009) ................... 19, 20, 22

*SEC v. KPMG, LLP*,
    No. Civ. 03-671, 2003 WL 1842871 (S.D.N.Y. Apr. 9, 2003) ............................... 13

*State v. Ball*,
    141 N.J. 142 (1995) .......................................................................................... 21

*Steck v. Santander Consumer USA Holdings Inc.*,
    Civ. No. 14-6942, 2015 WL 3767445 (S.D.N.Y. June 17, 2015) ....................... 10, 18

*T. Rowe Price Growth Stock Fund, Inc. v. Valeant Pharm. Int'l, Inc.*,
    No. Civ. 16-5034, 2018 WL 395730 (D.N.J. Jan. 12, 2018) ................................... 6

*TM Claims Serv. v. KLM Royal Dutch Airlines*,
143 F. Supp. 2d 402 (S.D.N.Y. 2001) ................................................................ 20

*Williams v. City of New York*,
No. Civ. 03-5342, 2006 WL 399456 (S.D.N.Y. Feb. 21, 2006)........................ 11, 12

*Wyndham Associates v. Bintliff*,
398 F.2d 614 (2d. Cir. 1968) ............................................................................ 12, 14

## Statutes and Rules

15 U.S.C. § 78aa ................................................................................................... 10

28 U.S.C. § 1404 ................................................................................................. 1, 9

Fed. R. Civ. P. 45(c)(1)(A) ................................................................................. 19

Defendants respectfully submit this Memorandum of Law in support of their Motion to Transfer Venue to the District of New Jersey pursuant to 28 U.S.C. § 1404.[1]

## PRELIMINARY STATEMENT

This action belongs in the District of New Jersey.

United States District Judge Michael A. Shipp of the District of New Jersey has been presiding over twenty-seven actions against Valeant, a corporation with its U.S. headquarters and principal place of business in New Jersey, and other defendants, for more than two years. These cases, which allege violations of federal securities law and New Jersey state law following a drop in Valeant's stock price in 2015, include a putative securities class action, a putative RICO class action, and twenty-five individual securities opt-out actions. The earliest of these cases was filed in October 2015.

The action before this Court ("Hound Partners") is brought by hedge funds from the Cayman Islands. It is substantively identical to the twenty-five New Jersey opt-out actions, making the same factual allegations, against the same defendants, pursuant to the same federal and state law causes of action. The Hound Partners Plaintiffs also explicitly acknowledge the alleged "Scheme's Connection to New Jersey" (Compl. at 181) and assert that they were solicited to buy Valeant stock during a meeting in New Jersey. (*Id*. ¶ 514.)

Considerable judicial resources have been expended in New Jersey over the past two years. Judge Shipp and Magistrate Judge Lois H. Goodman have resolved motions to dismiss in

---

[1]     Defendants are Valeant Pharmaceuticals International, Inc. ("Valeant"), Robert L. Rosiello, Ari S. Kellen, Robert A. Ingram, Ronald H. Farmer, Colleen Goggins, Theo Melas-Kyriazi, Anders Lonner, Robert N. Power, Norma Provencio, Katharine B. Stevenson, J. Michael Pearson, Howard B. Schiller, Deborah Jorn, Tanya Carro, PricewaterhouseCoopers LLP ("PwC"), Deutsche Bank Securities Inc., HSBC Securities (USA) Inc., MUFG Securities Americas Inc. f/k/a Mitsubishi UFJ Securities (USA) Inc., DNB Markets Inc., Barclays Capital, Inc., Morgan Stanley & Co. LLC, RBC Capital Markets, LLC, and Suntrust Robinson Humphrey, Inc. All Defendants support this motion.

eleven securities cases, held oral argument, presided over discovery conferences, and issued an omnibus coordination order.  While continuing to resolve motions to dismiss and allowing certain discovery to proceed, Judge Shipp has partially stayed the coordinated proceedings, on consent of the parties, pending resolution of a related criminal trial scheduled to begin on April 30, 2018.

Transfer to the District of New Jersey is appropriate for multiple reasons.

*First*, the threshold requirement for a § 1404 transfer motion—whether the action at issue could have been brought in the proposed transferee venue—is easily satisfied here.  Plaintiffs plainly could have brought this case in the District of New Jersey, where the class action and other opt-out cases are pending.

*Second*, judicial economy and the interest of justice—critical factors under § 1404— strongly support transfer.  Courts, including this one, have recognized that actions brought by investors opting out of a class action should be litigated before the same court overseeing the class action.  *See In re Worldcom, Inc. Sec. Litig.,* No. Civ. 02-3288, 2003 WL 21219037, at *1 (S.D.N.Y. May 22, 2003) (Cote, J.) (consolidating numerous individual actions with a putative class action).  The efficiencies to be gained from transfer in such circumstances are substantial. This case and the New Jersey cases involve the same documents, the same non-party discovery, and the same testimony from the same deponents.  The District of New Jersey is not only familiar with the facts and arguments, but has already decided dispositive motions similar to those that will be filed in this case and taken steps to coordinate all twenty-six securities actions so that they proceed in an organized fashion.  Conversely, absent a transfer, the inefficiencies and inequities will be significant, and the Defendants, including numerous individual

2

Defendants, will face duplicative proceedings in different jurisdictions and the risk of inconsistent results.

*Third*, the remaining eight § 1404 factors counsel in favor of transfer.  For example:

- New Jersey will be a more convenient venue for witnesses, as it is where many of the witnesses work or reside.

- New Jersey is a more convenient location for each of the Defendants, as they are already defending numerous substantively identical claims there.

- Core operative facts occurred in New Jersey, where Valeant's U.S. headquarters is located and where its officers and employees conduct business.

- Plaintiffs have asserted three causes of action under New Jersey state law, all of which the District of New Jersey is already addressing in the related opt-out actions.

- Relevant computers and hardcopy documents are located at Valeant's headquarters in New Jersey.

While a plaintiffs' choice of forum is a factor to be considered by this Court, Plaintiffs here are offshore investment funds headquartered in the Cayman Islands.  Their connection to New York is minimal, and they will not suffer any harm by litigating with the other opt-outs in New Jersey. Indeed, their choice of forum appears to be purely strategic and therefore not entitled to any meaningful deference.

As the U.S. Supreme Court has held, the purpose of § 1404 is to "prevent the waste of time, energy, and money" and to "protect litigants, witnesses, and the public against unnecessary inconvenience and expense."  *Ferens v. John Deere Co.*, 494 U.S. 516, 525 (1990).  Transfer of this action to the District of New Jersey serves these goals.

## BACKGROUND

Valeant is a specialty pharmaceutical and medical device company.  LaGorga Decl. ¶ 5. Its U.S. headquarters and principal place of business are in Bridgewater, New Jersey.  *Id.*

A.      **The District Of New Jersey Actions Begin In October 2015**

On October 22, 2015, a putative securities class action, *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 3:15-cv-07658 (D.N.J.) (the "Securities Class Action"), was filed against Valeant in the District of New Jersey asserting federal securities fraud claims following a drop in Valeant's stock price.  Compl. (ECF No. 1), *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 3:15-cv-07658 (D.N.J. Oct. 22, 2015).  That action arises out of events beginning in the fall of 2015, when Valeant faced negative publicity involving certain aspects of its multibillion-dollar business.  *Id.* ¶ 6.

On June 24, 2016, following the appointment of lead plaintiffs, a consolidated amended complaint was filed, alleging that Valeant—along with, at times, its officers and directors, underwriters, and auditor—made misstatements during the period January 4, 2013 through March 15, 2016 largely concerning Valeant's non-traditional business model, which focused more on acquisitions rather than on research and development, as well as Valeant's relationship with a pharmacy, Philidor Rx Services, LLC ("Philidor").  Ex. 1 (Consolidated Complaint for Violations of the Federal Securities Laws (ECF No. 80), *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 3:15-cv-07658 (D.N.J. June 24, 2016) ("Securities Class Action Compl.")) ¶ 1-12. The Securities Class Action asserted claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act").  *Id.* ¶¶ 538-728.

Twenty-five related securities opt-out actions have been filed since August 15, 2016.  *See* Stujenske Decl. App'x A.  Though there is some variation across the opt-out cases (*i.e.*, which defendants are named and which legal theories are asserted against which defendants), they all concern the same underlying alleged conduct as the Securities Class Action and assert federal securities fraud claims against Valeant under the Exchange Act.  *Id.*  Several opt-out actions also

add the exact same claims that Plaintiffs assert here under the Securities Act, New Jersey's RICO statute, and common law. *Id.*

In addition to the securities litigations, a putative class of entities who paid for prescription drugs on behalf of patients—known as "third-party payors"—have asserted federal RICO claims against Valeant. *See In re Valeant Pharm. Int'l, Inc. Third-Party Payor Litig.*, No. 16-cv-3087 (D.N.J.) (the "TPP Litigation"). Like the securities actions, plaintiffs in the TPP Litigation offer similar factual allegations. TPP Litigation Consol. Compl ¶¶ 1-12 (ECF No. 27), *In re Valeant Pharm. Int'l, Inc. Third-Party Payor Litig.*, No. 16-cv-3087 (D.N.J. Dec. 14, 2016).

In total, the twenty-seven actions filed to date in the District of New Jersey against Valeant involve twenty-five defendants, and 315 named plaintiffs represented by thirty-one law firms. Stujenske Decl. ¶ 5.

### B.   Substantial Dispositive Motion Practice Has Occurred In The District Of New Jersey

Defendants moved to dismiss the Securities Class Action on September 13, 2016. Mot. to Dismiss (ECF No. 164-169), *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 3:15-cv-07658 (D.N.J. Sept. 13, 2016). On April 28, 2017, following oral argument, Judge Shipp issued an opinion dismissing claims under Section 12(a)(2) of the Securities Act concerning certain Valeant debt offerings but otherwise denying Defendants' motions to dismiss. *See In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. Civ. 15-7658, 2017 WL 1658822, at *1, *10-15 (D.N.J. Apr. 28, 2017).

Since that decision, defendants have filed motions to dismiss, advancing only arguments that were not already addressed by Judge Shipp in his Securities Class Action decision. Stujenske Decl. ¶ 6. On January 12, 2018, Judge Shipp issued decisions resolving motions to

dismiss in ten opt-out cases, dismissing claims under New Jersey common law as preempted by the Securities Litigation Uniform Standards Act ("SLUSA"), but denying defendants' motions to dismiss claims under Section 18 and portions of claims under Section 10(b) of the Exchange Act. *See T. Rowe Price Growth Stock Fund, Inc. v. Valeant Pharm. Int'l, Inc.,* No. Civ. 16-5034, 2018 WL 395730, at *1, *3-7 (D.N.J. Jan. 12, 2018); *Discovery Global Citizens Master Fund, Ltd. v. Valeant Pharm. Int'l, Inc.*, No. Civ. 16-7321, 2018 WL 406046, at *1, *2-7 (D.N.J. Jan. 12, 2018). Additional motions to dismiss many of the remaining opt-outs are pending (or forthcoming).

### C.       Discovery Has Proceeded In The District Of New Jersey

Following the Securities Class Action decision, Judges Shipp and Goodman have coordinated discovery across the New Jersey actions. To date, Defendants have produced more than 520,000 documents, exceeding 3.7 million pages, in the Securities Class Action. Stujenske Decl. ¶ 7. Plaintiffs also have already subpoenaed at least 114 non-parties and received at least 930,000 additional pages of documents from them. *Id.* All of the discovery material produced by Valeant has been made available to the plaintiffs in opt-out cases that have progressed past motions to dismiss. *Id.*

Judge Shipp has taken other coordinating actions including entering two protective orders—one in the Securities Class Action and one tailored to the opt-out actions intended to "apply to any action deemed related to [the Securities Class Action], including currently pending actions and subsequently filed actions." Ex. 2 (Stipulation and Confidentiality Order (ECF No. 89), *T. Rowe Price Growth Stock Fund, Inc. v. Valeant Pharm. Int'l, Inc.*, No. 16-cv-5034 (D.N.J. Jan. 19, 2018)) ¶ 33. Thus, every opt-out and every future opt-out in the District of New Jersey will be governed by identical rules concerning confidentiality and document production. *Id.*

Additionally, over the past-two plus years, Magistrate Judge Goodman has taken briefs on discovery disputes regarding Philidor's obligation to produce documents. *See* Ex. 3 (Joint Letter from Plaintiffs and Philidor to Magistrate Judge Goodman, *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 3:15-cv-07658 (D.N.J. Oct. 13, 2017) ("Joint Letter to Magistrate Judge Goodman")).[2]

### D.   Partial Stay Of New Jersey Proceedings Pending Related Criminal Trial

On March 14, 2017, Philidor and its former CEO, both non-parties to the securities actions, requested that Judge Shipp stay the TPP Litigation until the conclusion of *United States v. Tanner, et al.*, No. 17-cr-61 (S.D.N.Y. Aug. 30, 2017), a criminal action scheduled for trial in April 2018.  Mot. To Stay (ECF No. 55), *In re Valeant Pharm. Int'l, Inc. Third-Party Payor Litig.*, No. 16-cv-3087 (D.N.J. Mar. 14, 2017).  In the criminal case, Gary Tanner, a former Valeant executive, is alleged to have engaged in a kickback scheme in which he was paid millions of dollars to convince Valeant to strengthen ties with Philidor.  Superseding Indictment ¶¶ 6-8, 16 (ECF No. 66), *United States v. Tanner, et al.*, No. 17-cr-61 (S.D.N.Y. Aug. 30, 2017).  The indictment further alleges that Tanner took other actions contrary to Valeant's interests, such as "resist[ing] efforts by Valeant's senior leadership to enter into business relationships with specialty pharmacies other than Philidor. . . ."  *Id.* ¶¶ 9(a)-(b).  In staying the TPP Litigation, Judge Shipp recognized that "resolution of the criminal case will moot, clarify, or otherwise

---

[2]      *See also* Mot. to Expedite Discovery to Serve Subpoena on Non-Party (ECF No. 9), *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 15-cv-7658 (D.N.J. Nov. 20, 2015); (Vacated) Order Granting Plaintiff's Mot. for Expedited Discovery (ECF No. 10), *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 15-cv-7658 (Dec. 3, 2015); Mot. for Reconsideration (ECF No. 19), *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 15-cv-7658 (Dec. 17, 2015); Order Denying Mots. for Discovery; Granting Mot. for Reconsideration (ECF No. 143), *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 15-cv-7658 (July 22, 2016).

affect various contentions in the civil case[s]." *In re Valeant Pharm. Int'l, Inc. Third-Party Payor Litig.*, No. Civ. 16-3087, 2017 WL 3429342, at *3 (D.N.J. Aug. 9, 2017).

On October 12, 2017, Magistrate Judge Goodman held a scheduling conference in the Securities Class Action, during which the parties addressed, among other things, discovery coordination among the Securities Class Action and the opt-outs, as well as the TPP Litigation. Shortly thereafter, on October 19, 2017, Judge Shipp issued an order *sua sponte* asking the parties for briefs addressing whether the Securities Class Action and opt-outs should also be stayed "[i]n consideration of the interests of justice, including the ongoing criminal proceedings and the potential overlapping discovery, and based on the Court's inherent power to control the matters on its docket." Ex. 4 (Order to Show Cause (ECF No. 273), *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 3:15-cv-07658 (D.N.J. Oct. 19, 2017)).

The parties agreed to a stay of the proceedings, so long as Valeant and PricewaterhouseCoopers LLP completed their productions of documents in response to the Securities Class Action plaintiffs' first request for production of documents, which sought documents produced to various government agencies. The consensual stay also provided that motions to dismiss would continue to be filed, briefed, and resolved in the opt-out actions—thus allowing the existing opt-out actions to "catch up" to the Securities Class Action during the pendency of the stay. Ex. 5 (Stipulation and Order Regarding Partial Stay (ECF No. 291), *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 3:15-cv-07658 (D.N.J. Nov. 29, 2017) ("Partial Stay Order")) ¶ 1. Motions to dismiss are being briefed or are yet to be filed in thirteen cases. Stujenske Decl. ¶ 6. On November 29, 2017, Judge Shipp approved the parties' agreement and ordered that it would "apply to any subsequent related actions filed in the District of New Jersey." Ex. 5 (Partial Stay Order) ¶ 3. Judge Shipp also set a status conference for March 15,

2018, shortly before the criminal trial is scheduled to begin.  *Id.* ¶ 2.  The plaintiffs in the related

actions have reserved their right to move to lift the stay.

### E.   Plaintiffs' Substantively Identical Factual Allegations And Legal Theories

Plaintiffs are Cayman Islands entities managed by a hedge fund with $4.5 billion in assets

under management.  (Compl. ¶¶ 19-21); Ex. 6 (Hound Partners LLC, Form ADV Part 2A at 2

(Mar. 30, 2016) ("Hound Partners LLC, Form ADV") (disclosing assets under management as of

December 31, 2015).  Every Defendant sued in this action is a defendant in some or all of the

related actions pending in the District of New Jersey—including fourteen individuals; every

cause of action asserted by Plaintiffs has been asserted by other plaintiffs in actions already

pending before the District of New Jersey; and the factual allegations asserted by Plaintiffs are

substantively identical to those asserted in the Securities Class Action.

Plaintiffs allege, in essence, that Valeant misrepresented the sustainability of its business

model and its relationship with Philidor.  These same allegations are set forth by plaintiffs in the

Securities Class Action.[3]  Plaintiffs also assert claims under Sections 10(b) and 20(a) of the

Exchange Act, and Sections 11, 12(a)(2), and 15 of the Securities Act.  All of these claims are

asserted in the Securities Class Action.  These same claims are also set forth in many of the

twenty-five of the New Jersey opt-out actions.  And while the Hound Partners Plaintiffs append

claims under Section 18 of the Exchange Act, New Jersey state law, and common law,

---

[3]      *Compare*, *e.g.*, Compl. ¶¶ 4, 6, 11, 51-52 ("Valeant and its management emphasized that Valeant's financial results were achieved because volume increases were 'greater than price in terms of [Valeant's] growth'. . ."), *with* Ex. 1 (Securities Class Action Compl. ¶ 12) ("To conceal the size of Valeant's price increases, and the extent to which its growth was dependent on such increases, Defendants misrepresented volume growth in its statements to investors.").  *Compare* Compl. ¶¶ 7, 56, 64 ("Valeant had developed a secret relationship with a network of 'specialty pharmacies' controlled by Valeant . . . At the center of this network was Philidor Inc. ('Philidor'), a pharmacy secretly created with the assistance and for the benefit, of Valeant."), *with* Ex. 1 (Securities Class Action Compl. ¶ 12) ("Philidor was the primary pharmacy in Valeant's secret network. . .").

substantially similar Section 18 claims are asserted in eighteen of the New Jersey opt-out actions, and all of Plaintiffs' state law causes of actions and common law causes of action are asserted by plaintiffs in *Lord Abbett Inv. Trust-Lord Abbett Short Duration Income Fund et al. v. Valeant Pharm. Int'l Inc., et al.*, No. 3:17-cv-06365 ("*Lord Abbett*") (complaint attached as Exhibit 8) and *The Boeing Co. Emp. Ret. Plans Master Trust and the Boeing Company Employee Savings Plans Master Trust v. Valeant Pharm. Int'l Inc., et al.*, No. 3:17-cv-07636.   For the Court's convenience, Appendix A to the Stujenske Declaration sets forth the relevant overlap in claims and defendants among the cases.

## ARGUMENT

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  In analyzing transfer under § 1404, the Court must determine:  (1) whether the action sought to be transferred could have been brought initially in the transferee court; and (2) whether the factors relating to the convenience of the transfer and the interests of justice favor a transfer.  *Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 656 (S.D.N.Y. 1998).

Once these threshold questions are satisfied, courts in this District consider nine factors:

> (1) the convenience of witnesses, (2) the convenience of the parties, (3) the location of relevant documents and the relative ease of access to sources of proof, (4) the locus of operative facts, (5) the availability of process to compel the attendance of unwilling witnesses, (6) the relative means of the parties, (7) the forum's familiarity with the governing law, (8) the weight accorded the plaintiff's choice of forum, and (9) trial efficiency and the interest of justice, based on the totality of the circumstances.

*Azari v. B&H Photo Video*, No. Civ. 06-7825, 2007 WL 13101, at *1-2 (S.D.N.Y. Jan. 3, 2007) (Cote, J.) (citing *Berman*, 30 F. Supp. 2d at 657); *see also Steck v. Santander Consumer USA Holdings Inc.*, Civ. No. 14-6942, 2015 WL 3767445, at *2 (S.D.N.Y. June 17, 2015) (same).

I.   **This Case Could Properly Be Filed In The District Of New Jersey, Where Twenty-Six Substantively Identical Securities Cases Are Pending**

"An action might have been brought in another forum if, at the time the action was originally filed, the transferee court would have had subject matter jurisdiction and personal jurisdiction over the defendants, and if venue would have been proper in the transferee court." *In re Anadarko Petroleum Corp.*, No. Civ. 10-5894, 2012 WL 12894796, at *2 (S.D.N.Y. Mar. 19, 2012) (internal citation omitted).  The District of New Jersey plainly has subject matter and personal jurisdiction over the defendants, and venue is proper in that district.  *See* 15 U.S.C. § 78aa.  There has been no jurisdictional challenge in any of the virtually identical securities cases pending there.

The Complaint pleads the same facts that would allow this action to have been filed in New Jersey, including "Valeant's U.S. headquarters and principal place of business" are in New Jersey, and "numerous Defendants . . . were employed or regularly conducted business out of Valeant's offices in New Jersey" and "substantial elements" of the alleged scheme took place there.  (Compl. ¶¶ 22, 472–474.)  Plaintiffs also assert claims under New Jersey state law.  (*Id.* ¶¶ 549-575).

II.   **Transfer Is Efficient And In The Interest Of Justice**

Of the nine factors that the Court must consider in deciding this transfer motion, the "trial efficiency and the interest of justice, based on the totality of the circumstances" is one of the most significant.  *Williams v. City of New York*, No. Civ. 03-5342, 2006 WL 399456, at *3 (S.D.N.Y. Feb. 21, 2006) (internal citations omitted).

A.   **Judge Shipp Is Actively Managing Twenty-Six Related Securities Cases**

"Pendency of . . . intimately related cases in the transferee forum weighs heavily in favor of transfer." *Berman*, 30 F. Supp. 2d at 660 (internal citation omitted).  Indeed, this factor is the

"overriding . . . 'consideration affecting the expeditious management of court business which argues persuasively for the transfer.'"  *Goggins v. Alliance Capital Mgmt., L.P.*, 279 F. Supp. 2d 228, 234 (S.D.N.Y. 2003) (citing *Wyndham Associates v. Bintliff*, 398 F.2d 614, 619 (2d. Cir. 1968)).  Thus, "courts consistently recognize that the existence of a related action in the transferee district . . . may be determinative."  *Williams*, 2006 WL 399456, at *3.

Courts are even more strongly inclined to transfer cases when there are numerous related actions in a different district.  *See APA Excelsior III L.P. v. Premiere Techs.*, *Inc.*, 49 F. Supp. 2d 664, 668-671 (S.D.N.Y. 1999) ("The overriding consideration in this case is the existence of [twenty-two] previously-filed and now consolidated actions in [another district].");  *see also JetBlue Airways Corp. v. Helferich Patent Licensing, LLC*, 960 F. Supp. 2d 383, 400-401 (E.D.N.Y. 2013) (transferring venue because, among other things, five actions pending in the transferee district would "hinge on identical issues").  In *APA Excelsior*, for example, the Court held that transfer was in the interest of justice because the action concerned allegations of misrepresentations in public filings similar to the allegations in twenty-two actions filed in the transferee district.  49 F. Supp. 2d at 668-70.  Even though the plaintiff asserted additional causes of action not raised in the related consolidated action, the court held that "both actions hinge on the same core of operative facts and that a transfer will serve the interests of judicial economy and fairness by avoiding duplicative litigation and the possibility of inconsistent rulings."  *Id.* (internal citation omitted).  The same is certainly true here, where Judge Shipp has made significant efforts to coordinate all twenty-six pending securities cases against Valeant that are before him.  Allowing this lone case to proceed on its own could potentially disrupt the timing and efficiencies intended by Judge Shipp's coordinated schedule.  *See In re CenturyLink, Inc. Sec. Litig.*, No. Civ. 13-3839, 2014 WL 1089116, at *2 (S.D.N.Y. Mar. 18, 2014) ("To permit a

situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that section 1404(a) was designed to prevent.") (citing *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960)).

**B.     This Opt-Out Action Is Substantively Identical To The District Of New Jersey Actions**

Courts routinely transfer opt-out actions to the court overseeing the relevant class action. *See, e.g.*, *Langley Partners, L.P. v. Tripath Tech.*, *Inc.*, No. Civ. 05-5255, 2005 WL 2482527, at *1-3 (S.D.N.Y. Oct. 6, 2005); *Berman*, 30 F. Supp. 2d at 655, 660.  Consistent with that precedent, this Court has recognized that where an opt-out Plaintiffs' complaint "draws heavily on the class action complaint, it would be far more efficient for [the class action judge] to supervise th[e] related action as well." *Maverick Fund, L.D.C. v. Lender Processing Servs., Inc.*, No. Civ. 13-5474, 2013 WL 6467889, at *3 (S.D.N.Y. Dec. 10, 2013) (Cote, J.).[4]  *Every* cause of action asserted was previously asserted in New Jersey, and every Defendant sued here was already sued there as well.  *See* Stujenske Decl. App'x A.  Moreover, the factual allegations in Plaintiffs' Complaint mirror allegations in the Securities Class Action and related opt-outs,[5] and

---

[4]     By contrast, this Court has denied a motion to transfer an action brought by the SEC against an auditor where the "related" actions sought different relief, were subject to different burdens of proof and none of the individual defendants overlapped.  *SEC v. KPMG, LLP,* No. Civ. 03-671, 2003 WL 1842871, at *5 (S.D.N.Y. Apr. 9, 2003) (Cote, J.).

[5]     *Compare, e.g.*, Compl. ¶¶ 3-6  (alleging that Valeant misrepresented that its business model was sustainable), *with* Ex. 1 (Securities Class Action Compl. ¶¶ 10-12), *and* Ex. 7 (Complaint and Demand for Jury Trial ¶ 5 (ECF No. 1), *Lord Abbett Investment Trust-Lord Abbett Short Duration Income Fund et al. v. Valeant Pharm. Int'l Inc., et al.*, No. 3:17-cv-06365 (D.N.J. Aug. 23, 2017) ("*Lord Abbett* Compl.")), *and* Ex. 8 (Complaint for Violation of the Federal Securities Laws ¶¶ 4-5 (ECF No. 1), *T. Rowe Price Growth Stock Fund, Inc., et al. v. Valeant Pharm. Int'l, Inc., et al.*, No. 3:16-cv-05034 (D.N.J. Aug. 15, 2016) ("*T. Rowe Price* Compl.")).  *Compare* Compl. ¶¶ 9, 132 (alleging that Valeant improperly booked revenue related to Philidor), *with* Ex. 1 (Securities Class Action Compl. ¶ 12), *and* Ex. 7 (*Lord Abbett* Compl. ¶ 142), *and* Ex. 8 (*T. Rowe Price* Compl. ¶¶ 329-332).  *Compare* Compl. ¶¶ 68-69 (allegations that Valeant employees worked at Philidor and used aliases to conceal their identity as Valeant employees), *with* Ex. 1 (Securities Class Action Compl. ¶ 12), *and* Ex. 7 (*Lord Abbett* Compl. ¶¶ 58, 96), *and* Ex. 8 (*T. Rowe Price* Compl. ¶ 80).  *Compare* Compl. ¶ 413 (allegations that Defendants constituted a RICO enterprise under New Jersey state law), *with* Ex. 7 (*Lord Abbett* Compl. ¶ 41).

the same SEC filings, press releases and conference calls that Plaintiffs allege to be misleading here are cited in the Securities Class Action complaint. *Compare* Compl. ¶¶ 127-334 *with* Ex. 1 (Securities Class Action Compl.) ¶¶ 99, 132-230, 276, 671.

While Plaintiffs do make some effort to relabel their allegations, such relabeling does not change underlying factual allegations, the identity of the defendants or the legal theories. For example, Plaintiffs reframe the Securities Class Action's allegations regarding "Valeant's Non-Traditional Business Strategy" as allegations regarding "Valeant's Acquisition-Centric Business Model." *Compare* Ex. 1 (Securities Class Action Compl.) at 21 *with* Compl. at 13. Similarly, they replace allegations about Valeant's "Clandestine Pharmacy Network" with allegations about Valeant's "Secret Pharmacy Network." *Compare* Ex. 1 (Securities Class Action Compl.) at 30, *with* Compl. at 21. Labels aside, the facts and causes of action remain the same.

### C.    The District Of New Jersey Has Expended Substantial Resources

"There is a strong policy favoring the litigation of related claims in the same tribunal in order that pretrial discovery can be conducted more efficiently, duplicative litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided." *APA Excelsior*, 49 F. Supp. 2d at 667 (citing *Wyndham*, 398 F.2d at 619). As this Court has recognized,

> [I]t is essential that there be a sensible structure in place for coordinating the Individual Actions. A failure to establish such a structure will be wasteful for everyone. Without a working structure, defense counsel, Lead Counsel and the Court will have to spend time addressing the same issues repeatedly with the many different law firms representing plaintiffs in the Individual Actions. This is not only inefficient and costly, but will also divert resources from the merits of the . . . litigation and result in unnecessary delay.

*Worldcom*, 2003 WL 21219037, at *3. Transfer is therefore particularly important when the judge in the transferee district "has already made a substantial commitment to the supervision of litigation over the scheme alleged here." *Maverick Fund*, 2013 WL 6467889, at *3.

14

The same issues that will arise in this case regarding privilege, the scope of discovery, and the merits have arisen in New Jersey.  Over the past two-plus years, Judges Shipp and Goodman have already addressed many of the issues that would be presented to this Court including, among others, resolving dispositive motions in eleven cases, holding oral argument, holding conferences on discovery matters, resolving substantive discovery disputes and coordinating discovery among all twenty-six securities actions.  As such, it would be "far more efficient" for these judges—already familiar with the facts and law at issue—to handle this case in coordination with the others.  *Id.* at *3 (holding that it would be "far more efficient" for a transferee judge to supervise an opt-out action related to a class action when that transferee judge had spent years becoming familiar with specific allegations in the class action complaint and had decided a motion to dismiss that class action).  *See also Berman,* 30 F. Supp. 2d at 660 ("Having two such actions proceeding at the same time, involving duplicative discovery and motion practice, would serve no purpose and might lead ultimately to inconsistent results, a possibility that is heavily frowned upon by the courts.") (internal quotation omitted); *see also Levy v. Welsh,* No. Civ. 12-2056, 2013 WL 1149152, at *6 (E.D.N.Y. Mar. 19, 2013) ("In the instant action, plaintiff raises many of the same claims against primarily the same defendants and seeks similar relief as the plaintiffs in the Class Actions. . . . . Having duplicative actions in which two federal judges preside over the same basic claims, is a waste of judicial resources, will cause the parties to unnecessarily expend additional time and resources, will result in duplicative discovery, and will risk potentially inconsistent results regarding, *inter alia,* discovery rulings, privilege issues, *Daubert* motions and summary judgment.").

## III.    All Additional Factors Weigh In Favor Of Defendants

In addition to being efficient and in the interest of justice, the remaining eight factors also weigh in favor of transfer.

### A. Transfer to The District Of New Jersey Will Be More Convenient For The Witnesses

"[I]n cases where, as here, the plaintiff alleges that certain documents contained false or misleading statements, the key witnesses are frequently officers and employees of the issuer who participated in drafting or distributing those statements." *In re Global Cash Access Holdings, Inc. Sec. Litig.*, No. Civ. 08-3516, 2008 WL 4344531, at *4 (S.D.N.Y. Sept. 18, 2008) ("[T]he events giving rise to this case support the defendants' general assertion that a substantial number of potential material witnesses reside in Nevada [*i.e.*, the location of the issuer].") (internal citations omitted). Valeant's U.S. headquarters is in New Jersey, where Valeant employees responsible for preparing the SEC filings, press releases and statements on earnings calls referenced in the Complaint worked during the relevant time frame. LaGorga Decl. ¶¶ 10, 11. Many witnesses to be called in this Action will almost inevitably be called to testify in all related twenty-seven actions pending in the District of New Jersey. It would be more convenient for each witness if the parties coordinated depositions so that each witness only needs to be deposed once, with those depositions overseen by a single court. The same is true for the 114 non-parties who have been subpoenaed in the Securities Class Action, as document productions and motions to compel—including those already briefed before Judges Shipp and Goodman concerning Philidor—can be overseen by one court. Accordingly, transfer would be more convenient for the witnesses. *See Goggins*, 279 F. Supp. 2d at 233 (observing that where witnesses are already being called to testify in related actions, transfer would permit those witnesses to testify only once); *Worldcom*, 2003 WL 21219037, at *6 (holding that individuals should only be deposed once).

16

**B.      The District Of New Jersey Is More Convenient For The Parties**

Since securities fraud trials generally tend to focus on defendants' conduct, the convenience of the defendants is the appropriate focus.  *See Goggins*, 279 F. Supp. 2d at 233 (citing *In re Nematron Corp. Sec. Litig.*, 30 F. Supp. 2d 397, 402 (S.D.N.Y. 1998)).  "In analyzing the convenience of the parties, the logical starting point is a consideration of their residence."  *Global Cash*, 2008 WL 4344531, at *5 (internal citation omitted).  Nevertheless, as with the convenience of the witnesses prong, "location alone does not determine convenience when the denial of transfer would result in two pretrial discovery processes going forward simultaneously."  *Goggins*, 279 F. Supp. 2d at 233.

To start, Valeant's U.S. headquarters is in New Jersey and all of the individual defendants conducted business from that office during the relevant time frame.  *See* LaGorga Decl. ¶¶ 8, 9.  Moreover, since all of the individual defendants, the auditor defendant and the bank offering defendants support this motion to transfer, the Court need not consider each of their residences in analyzing this factor.  *Global Cash*, 2008 WL 4344531, at *5 (stating that it did not need to account for the convenience of an auditor defendant that supported a motion to transfer or an underwriter defendant who did not oppose the motion to transfer).  Forcing these Defendants to spend time and energy litigating these claims in two different fora would create a substantial and unnecessary burden.

**C.      The Relevant Documents Are In New Jersey**

Although "technological advances" have made it easier to transport documents, courts still consider that "it is at least marginally more convenient to conduct this litigation in the district where most of the relevant documents are located."  *In re Collins & Aikman Corp. Sec. Litig.*, 438 F. Supp. 2d 392, 396-397 (S.D.N.Y. 2006).  Courts focus on where the "financial statements, press releases, earnings statements and SEC filings were prepared and located,"

rather than on where the lead underwriters, auditors or law firms maintain documents. *Global Cash*, 2008 WL 4344531, at *5-6 (internal citation omitted) (rejecting the arguments in the plaintiff's attorney declaration that the lead underwriters, auditors and the law firm that conducted the internal investigation had a substantial amount of documents in New York). Here, that is New Jersey. *See* LaGorga Decl. ¶ 12.

### D.     The Facts Alleged In The Complaint Occurred In New Jersey

"While there is no *per se* rule requiring or presumptively favoring the transfer of a securities-fraud action to the district where the issuer is headquartered, such transfers to the issuer's home district are routine as a practical matter." *Steck,* 2015 WL 3767445, at *3 (quoting *In re AtheroGenics Sec. Litig.*, No. Civ. 05-61, 2006 WL 851708, at *3 (S.D.N.Y. Mar. 31, 2006)). Because securities cases "focus almost entirely on defendant's conduct," *Goggins*, 279 F. Supp. 2d at 233, courts regularly move securities cases to the issuer's district, where the alleged operative events giving rise to the claim occurred. *In re ChannelAdvisorCorp. Sec. Litig.*, No. Civ. 15-506, 2015 WL 4064625, at *3-4 (S.D.N.Y. July 2, 2015). "[M]isrepresentations are deemed to occur in the district where the misrepresentations are issued or the truth is withheld, not where the statements at issue are received." *Id.* at *3 (citing *Collins & Aikman*, 438 F. Supp. 2d at 397).

In *Maverick Fund*, this Court held that, in a securities fraud case, "[v]irtually all of the critical events that will need to be explored in this litigation occurred" in the district where the defendant company's headquarters were, which was "where the defendants prepared the SEC filings, press releases and earnings call statements that give rise to allegations that the defendants engaged in fraud." 2013 WL 6467889, at *3. In *SEC v. Kearns*, this Court held that the operative facts occurred in the district where a company was headquartered despite the plaintiff's argument that there were meaningful connections to New York—namely, the company's shares

were traded on NASDAQ, New York-based analysts followed the company's stock prices and New York-based customers were harmed by the alleged fraud.  No. Civ. 09-2296, 2009 WL 2030235, at *3 (S.D.N.Y. July 14, 2009) (Cote, J.).  This Court found that such "alleged connections are either peripheral to the scheme alleged in the complaint, which as alleged was carried out principally in New Jersey, and in which both defendants allegedly participated in New Jersey, or are common to many fora and do not in any way meaningfully distinguish the chosen forum."  *Id.*

The Complaint here expressly cites the alleged "Scheme's Connection to New Jersey." (Compl. at 181.)  New Jersey was and is the location of the Valeant U.S. headquarters and principal place of business, and where numerous defendants, senior executives and members of an alleged enterprise were employed and regularly conducted business.  (*Id*. ¶¶ 472-474.) According to Plaintiffs, "substantial elements of the illegal scheme including deliberation and implementation of growth-by-acquisition model, price-gouging strategies, and Valeant's AF program were orchestrated from Valeant's New Jersey offices where many of Valeant's senior executives were located."  (*Id*. ¶ 474.)  Plaintiffs also state explicitly that the "preparation of false and misleading financial statements and other misrepresentations on investor and earnings calls, originated from Valeant's New Jersey offices."  (*Id*. ¶¶ 475.)  Plaintiffs even cite their investment advisor's attendance at a meeting with Defendants Pearson and Schiller at Valeant's headquarters in New Jersey, where Valeant allegedly tried to "induce Plaintiffs to purchase Valeant securities."  (*Id*. ¶ 514.)

By contrast, the only facts that Plaintiffs allege occurred in New York are that Valeant shares were sold on the New York Stock Exchange, Tanner and his co-defendant were charged in New York, articles were written about Valeant's alleged misconduct in periodicals with the

19

words "New York" in their title (among scores of others) and Plaintiffs—Cayman Islands

entities—are "managed by Hound Partners LLC primarily out of [the] LLC's New York office."

(*Id.* ¶¶ 18-21, 45, 96, 274, 279, 427).  These are precisely the type of "peripheral" allegations

rejected by this Court in *Kearns*.   2009 WL 2030235, at *3.

>    **E.      Unwilling Witnesses Are More Likely To Be Located Within 100 Miles of**
>    **The District Of New Jersey**

 "The Court considers the location of non-party witnesses, and the ability to secure their

appearance for trial, particularly important." *Erickson v. Corinthian Colleges, Inc.*, No. Civ. 13-

4308, 2013 WL 5493162, at *3 (S.D.N.Y. Oct. 1, 2013); *TM Claims Serv. v. KLM Royal Dutch

Airlines*, 143 F. Supp. 2d 402, 406 (S.D.N.Y. 2001).  Under Federal Rule of Civil Procedure

45(c)(1)(A), the court's subpoena power to command a person to attend a trial, hearing or

deposition extends only "within 100 miles of where the person resides, is employed or regularly

transacts business in person." Fed. R. Civ. P. 45(c)(1)(A).

Plaintiffs' complaint demonstrates that litigating this case in the Southern District of New

York escalates the risk that the Court may not be able to compel unwilling witnesses to testify.

For example, Plaintiffs' complaint makes clear that the actions of Philidor—a "relevant non-

party" with its headquarters in Horsham, Pennsylvania—are essential to their allegations.

(Compl. ¶¶ 7-8, 43.)  Additionally, the Complaint identifies "Cambria Central Fill, based out of

Philadelphia, Pennsylvania", as part of a network of pharmacies operated by Philidor.  (*Id.* ¶92.)

Both of these entities have resisted producing documents in the Securities Class Action.  *See* Ex.

3 (Joint Letter to Magistrate Judge Goodman) (summarizing discovery dispute between Philidor

and plaintiffs in the Securities Class Action).  Witnesses from these non-parties are more likely

to be subject to process in New Jersey than New York.  Transfer would eliminate any concerns

regarding the Court's power to compel witnesses who reside in Pennsylvania.

**F.      Plaintiffs Are Cayman Hedge Funds Worth Billions Of Dollars; They Can Afford To Litigate In New Jersey**

When a plaintiff has limited financial resources, courts sometimes conclude that this weighs in favor of allowing a plaintiff to litigate in its home state. *Berman*, 30 F. Supp. 2d at 659. That principle has no applicability here. Plaintiffs are off-shore hedge funds, located in the Cayman Islands, and run by a hedge fund manager with $4.5 billion in assets under management. *See, e.g.,* Ex. 6 (Hound Partners LLC, Form ADV at 2) (disclosing assets under management as of December 31, 2015). When a plaintiff is a "very substantial business," it will "be able to afford litigation in [the transferee state]." *Maverick Fund,* 2013 WL 6467889, at *3; *see also Int'l Bus. Machines Corp. v. Fair Isaac Corp.*, No. Civ. 05-10296, 2006 WL 726034, at *2 (S.D.N.Y. Mar. 23, 2006) (Cote, J.) (stating that this factor was neutral because both parties were "substantial corporations that would be able to support this litigation in either [district].").

**G.      The District Of New Jersey Is Most Familiar With The New Jersey State Law Claims**

Even when there "may not be novel or complex issues of State law to be resolved, construction of State law is best left to courts most familiar with it." *Ruiz ex rel. E.R. v. United States*, No. Civ. 1241, 2014 WL 4662241, at *13 (E.D.N.Y. Sept. 18, 2014) (citing *Kreisner v. Hilton Hotel Corp.*, 468 F. Supp. 176, 179 (E.D.N.Y. 1979)). Here, Plaintiffs assert three counts under New Jersey's RICO statute. Whether Plaintiffs have adequately pleaded the elements of these causes of action will turn on questions of New Jersey law. *See*, *e.g.*, *State v. Ball*, 141 N.J. 142 (1995) (analyzing whether a plaintiff asserting a New Jersey RICO claim adequately pleads that an "enterprise" was formed under New Jersey law). Additionally, Plaintiffs assert one count of common-law negligent misrepresentation and one count of common-law fraud, which Judge Shipp has already addressed under New Jersey law. While the District of New Jersey is already

21

generally more familiar with the relevant state law, here Judge Shipp has already specifically addressed, or will address, identical state-law claims in the earlier-filed opt-out actions.

### H.    Plaintiffs' Choice Of Forum Does Not Warrant Deference

This Court has stated that a plaintiff's choice of forum "is entitled to less deference when the forum is neither the plaintiff's home nor the place where the operative facts of the action occurred." *Azari*, 2007 WL 13101, at *2; *Kearns*, 2009 WL 2030235, at *3. Moreover, a plaintiff's choice of forum is accorded even less deference where "there is no . . . strong connection between the instant case and this district." *See Kearns*, 2009 WL 20130235, at *2-4. *See also Maverick Fund*, 2013 WL 6467889, at *2 ("The more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons, the less deference the plaintiff's choice commands. . . .") (internal citation omitted).

Plaintiffs do not reside in New York; they are Cayman Islands entities. There is no real connection between the instant case and this district. The few "peripheral" connections with this forum—that the stock was traded on the New York Stock Exchange and New York publications released articles on Valeant's strategies—"hardly demonstrates that the operative facts that are central to this complaint took place in this forum." *Kearns*, 2009 WL 2030235, at *3. To the contrary, in order to avail themselves of New Jersey state law, Plaintiffs emphasize the strong connection between this case and *New Jersey*, alleging that "substantial elements" of the allegedly illegal scheme took place in New Jersey. (Compl. ¶¶ 474.)

## CONCLUSION

Defendants respectfully request that the Court transfer this action to the District of New Jersey.

Dated: February 2, 2018

**SIMPSON THACHER & BARTLETT LLP**

*s/ Paul C. Curnin*

Paul C. Curnin
Jonathan K. Youngwood
Craig S. Waldman
Daniel J. Stujenske
Dean McGee
425 Lexington Avenue
New York, NY 10017
Tel: (212) 455-2000

*Counsel for Defendants Valeant Pharmaceuticals International, Inc., Robert L. Rosiello, Ari S. Kellen, Ronald H. Farmer, Colleen Goggins, Robert A. Ingram, Anders Lönner, Theo Melas- Kyriazi, Robert N. Power, Norma Provencio and Katharine B. Stevenson*

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

Richard A. Rosen
1285 Avenue of the Americas
New York, NY 10019
Tel:  (212) 373-3305

*Counsel for Defendants Deutsche Bank Securities, Inc., HSBC Securities (USA) Inc., MUFG Securities Americas Inc., DNB Markets Inc., Barclays Capital, Inc., Morgan Stanley & Co. LLC, RBC Capital Markets, LLC, and Suntrust Robinson Humphrey, Inc.*

**COOLEY LLP**

William J. Schwartz
Laura G. Birger
1114 Avenue of the Americas
New York, NY 10036
Tel: (212) 479-6000

*Counsel for Defendant Tanya Carro*

**SCHULTE ROTH & ZABEL LLP**

Cara David
Barry A. Bohrer
Michael L. Yaeger
919 Third Avenue
New York, NY 10022
Tel: (212) 756-2000

*Counsel for Defendant Deborah Jorn*

**DEBEVOISE & PLIMPTON LLP**

Holly S. Wintermute
919 Third Avenue
New York, NY 10022
Tel: (212) 909-6000

Jonathan R. Tuttle
Ada F. Johnson
801 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 383-8000

*Counsel for Defendant J. Michael Pearson*

**KING & SPALDING LLP**

James J. Capra
1185 Avenue of the Americas
New York, NY 10036
Tel: (212) 556-2100

Kenneth Y. Turnbull
1700 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: (202) 737-0500

*Counsel for Defendant
PricewaterhouseCoopers LLP*

**WINSTON & STRAWN LLP**

Melissa Steedle Bogad
200 Park Avenue
New York, NY 10166
Tel: (212) 294-6700

*Counsel for Defendant Howard B. Schiller*