**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HOUND PARTNERS OFFSHORE FUND, LP, HOUND PARTNERS LONG MASTER, LP, and HOUND PARTNERS CONCENTRATED MASTER, LP, | |
| Plaintiffs, | Civil Action No. 1:18-cv-76-DLC |
| v. | |
| VALEANT PHARMACEUTICALS INTERNATIONAL, INC., J. MICHAEL PEARSON, HOWARD B. SCHILLER, ROBERT L. ROSIELLO, DEBORAH JORN, ARI S. KELLEN, TANYA CARRO, ROBERT A. INGRAM, RONALD H. FARMER, COLLEEN GOGGINS, THEO MELAS-KYRIAZI, ANDERS LONNER, ROBERT N. POWER, NORMAL PROVENCIO, KATHERINE B. STEVENSON, PRICEWATERHOUSECOOPERS LLP, DEUTSCHE BANK SECURITIES INC., HSBC SECURITIES (USA) INC., MUFG SECURITIES AMERICAS INC. f/k/a UFJ SECURITIES (USA) INC., DNB MARKETS INC., BARCLAYS CAPITAL, INC., MORGAN STANLEY & CO. LLC, RBC CAPITAL MARKETS, LLC, and SUNTRUST ROBINSON HUMPHREY, INC., | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION TO TRANSFER TO THE DISTRICT OF NEW JERSEY**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

FACTUAL BACKGROUND ...................................................................................................4

      A.     Factual Allegations ................................................................................4

      B.     Procedural History ................................................................................6

ARGUMENT .........................................................................................................................8

I.       Defendants' Must Meet High A Threshold to Warrant Transfer.......................................8

II.     Defendants Have Successfully Argued That The District of New Jersey Does Not
Have Jurisdiction Over Plaintiffs' Common Law Claims ................................................10

III.    Transfer Is Neither Convenient Nor Efficient ................................................................13

IV.    The Additional Factors Either Weigh Against Transfer Or Are Neutral...........................16

      A.     Convenience of the Witnesses Weighs Against Transfer ......................................16

      B.     Convenience of the Parties Weighs Against Transfer ...........................................19

      C.     The Location of the Documents Does Not Support Transfer ...............................20

      D.     The Locus of Operative Facts Does Not Support Transfer....................................20

      E.     Defendants Have Not Identified a Single Unwilling Witness ..............................21

      F.     The Relative Means of the Parties Does Not Support Transfer...........................22

      G.     This Court is More Than Competent to Hear The New Jersey Law Claims .........22

      H.     Plaintiffs' Choice of Forum Should be Afforded Great Deference ......................23

CONCLUSION....................................................................................................................25

## TABLE OF AUTHORITIES

### Cases                                                          Page

*About.com, Inc. v. Aptimus, Inc.*,
    2001 WL 503251 (S.D.N.Y. May 11, 2001) ........................................................ 23

*Ahmed v. T.J. Maxx Corp.*,
    777 F. Supp. 2d 445 (E.D.N.Y. 2011) ................................................................ 10

*Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Lafarge N. Am. Inc.*,
    474 F. Supp. 2d 474 (S.D.N.Y. 2007) ............................................................... 20

*AT&T. Co. v. Milgo Elec. Corp.*,
    428 F. Supp. 50 (S.D.N.Y. 1977) ........................................................................ 9

*Atl. Marine Const. Co. v. U.S. Dist. Ct.*
    134 S.Ct. 568 (2013) ......................................................................................... 23

*Atl. Recording Corp. v. Project Playlist, Inc.*,
    603 F. Supp. 2d 690 (S.D.N.Y. 2009) .......................................................... 8, 22

*Blass v. Capital Int'l Sec. Grp.*,
    2001 WL 301137 (E.D.N.Y. Mar. 23, 2001) ..................................................... 16

*Buckeye Pennsauken Terminal LLC v. Dominique Trading Corp.*,
    150 F. Supp. 3d 501 (E.D. Pa. 2015) ................................................................ 11

*Bukhari v. Deloitte & Touche LLP*,
    2012 WL 5904815 (S.D.N.Y. Nov. 26, 2012) ................................................... 15

*Calabrese v. Teoco Corp.*,
    637 F. Supp. 2d 160 (S.D.N.Y. 2009) .............................................................. 19

*Cohen v. Maher*,
    2017 WL 663553 (S.D.N.Y. Feb. 17, 2017) ..................................................... 10

*Cohn v. Metro. Life Ins., Co.*,
    2007 WL 1573874 (S.D.N.Y. May 31, 2007) ............................................... 16, 22

*Cont'l Grain Co. v. The FBL-585*,
    364 U.S. 19 (1960) ........................................................................................... 10

*Coraud LLC v. Kidville Franchise Co., LLC*,
    121 F. Supp. 3d 387 (S.D.N.Y. 2015) .............................................................. 23

*Costigan v. CitiMortgage, Inc.*,
    2011 WL 3370397 (S.D.N.Y. Aug. 2, 2011) ..................................................... 23

*Crede CG III, Ltd. V. 22nd Century Grp., Inc.*,
    2017 WL 280818 (S.D.N.Y. Jan. 20, 2017) ...................................................... 10

*D.H. Blair & Co. v. Gottdiener*,
    462 F.3d 95 (2d Cir. 2006) ................................................................................ 24

*Discovery Glob. Citizens Master Fund, Ltd. v. Valeant Pharm. Int'l, Inc.*,
  2018 WL 406046 (D.N.J. Jan. 12, 2018) ............................................................. 7, 11

*Eagle Auto Mall Corp. v. Chrysler Grp., LLC*,
  760 F. Supp. 2d 421 (S.D.N.Y. 2011) ........................................................................ 19

*Ebusinessware, Inc. v. Tech. Servs. Grp. Wealth Mgmt. Sols., LLC*,
  2009 WL 5179535 (S.D.N.Y. Dec. 29, 2009) ............................................................ 23

*Fernandez v. UBS AG*,
  222 F. Supp. 3d 358 (S.D.N.Y. 2016) ........................................................................ 12

*Freeplay Music, LLC v. Gibson Brands, Inc.*,
  195 F. Supp. 3d 613 (S.D.N.Y. 2016) ................................................................... 8, 24

*FSI Grp. v. First Fed. Sav. & Loan Ass'n*,
  502 F. Supp. 356 (S.D.N.Y. 1980) ............................................................................. 24

*Gross v. BBC*,
  386 F.3d 224 (2d Cir. 2004) ......................................................................................... 8

*Hampton v. Pac. Inv. Mgmt. Co. LLC*,
  869 F.3d 844 (9th Cir. 2017) ..................................................................................... 12

*Hershman v. UnumProvident Corp.*,
  658 F. Supp. 2d 598 (S.D.N.Y. 2009) .................................................................... 9, 23

*Hertz Corp. v. Friend*,
  559 U.S. 77 (2010) ...................................................................................................... 24

*Hummingbird USA, Inc. v. Tex. Guaranteed Student Loan Corp.*,
  2007 WL 163111 (S.D.N.Y. Jan. 24, 2007) ............................................................... 17

*In re Geopharma, Inc.*,
  2005 WL 1123883 (S.D.N.Y. May 11, 2005) ....................................................... 17, 18

*In re Glob. Cash Access Holdings, Inc. Sec. Litig.*,
  2008 WL 4344531 (S.D.N.Y. Sept. 18, 2008) ................................................. 16, 17, 19

*In re Kingate Mgmt. Ltd. Litig.*,
  2016 WL 5339538 (S.D.N.Y. Sept. 21, 2016) ............................................................ 12

*In re Lord Abbett Mut. Funds Fee Litig.*,
  553 F.3d 248 (3d Cir. 2009) ................................................................................. 11, 12

*In re Petrobras Sec. Litig.*,
  222 F. Supp. 3d 1345 (J.P.M.L. 2016) ....................................................................... 15

*In re Refco Inc. Sec. Litig.*,
  826 F. Supp. 2d 478 (S.D.N.Y. 2011) ........................................................................ 23

*In re Stanford Entities Sec. Litig.*,
  MDL No. 2099 (J.P.M.L. June 7, 2012) ..................................................................... 13

*In re Tremont Grp. Holdings, Inc. Sec. Litig.*,
  MDL No. 2052 (J.P.M.L. Dec. 12, 2012) ................................................................... 13

*In re Valeant Pharm. Int'l, Inc. Sec. Litig.*,
  2017 WL 1658822 (D.N.J. Apr. 28, 2017) ............................................................. 7

*In re WorldCom, Inc. Sec. Litig.*,
  308 F. Supp. 2d 236 (S.D.N.Y. 2004) ........................................................... 14, 15

*Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*,
  419 F. Supp. 2d 395 (S.D.N.Y. 2005) ................................................................. 9

*Martignago v. Merrill Lynch & Co.*,
  2012 WL 112246 (S.D.N.Y. Jan. 12, 2012) ..................................................... 20, 22

*Mastr Asset Backed Sec. Tr. 2007-WMC1, ex rel. U.S. Bank Nat. Ass'n v.*
  *WMC Mortg. LLC*,
  880 F. Supp. 2d 418 (S.D.N.Y. 2012) ................................................................ 23

*Mazuma Holding Corp. v. Bethke*,
  1 F. Supp. 3d 6 (E.D.N.Y. 2014) ........................................................................ 16

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
  547 U.S. 71 (2006) ............................................................................................. 14

*Mirror Worlds Techs., LLC v. Facebook, Inc.*,
  2017 WL 5634127 (S.D.N.Y. Nov. 20, 2017) ...................................................... 8

*Mortg. Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*,
  2015 WL 6516787 (S.D.N.Y. Oct. 28, 2015), *superseded on other grounds*, 2015 WL
  9413881 (S.D.N.Y. Dec. 22, 2015) ................................................................... 10

*N.Y. Marine & Gen. Ins. Co. v. Lafarge N.A., Inc.*,
  599 F.3d 102 (2d Cir. 2010) ........................................................................... 8, 9

*Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman*,
  306 B.R. 746 (S.D.N.Y. 2004) .......................................................................... 15

*Orb Factory, Ltd. v. Design Sci. Toys, Ltd.*,
  6 F. Supp. 2d 203 (S.D.N.Y. 1998) .................................................................. 16

*Posven, C.A. v. Liberty Mut. Ins. Co.*,
  303 F. Supp. 2d 391 (S.D.N.Y. 2004) ............................................................... 10

*Robb Evans & Assocs. LLC v. Sun Am. Life Ins.*,
  2012 WL 488257 (S.D.N.Y. Feb. 14, 2012) ...................................................... 24

*Roland v. Green*,
  675 F.3d 503 (5th Cir. 2012) ........................................................................... 13

*SEC v. Kearns*,
  2009 WL 2030235 (S.D.N.Y. July 14, 2009) ..................................................... 21

*Sierra Club v. Van Antwerp*,
  523 F. Supp. 2d 5 (D.D.C. 2007) ..................................................................... 25

*Thomas v. JPMorgan Chase & Co.*,
  811 F. Supp. 2d 781 (S.D.N.Y. 2011) ............................................................... 23

*Vanguard Int'l Equity Index Fund v. Petroleo Brasileiro S.A.-Petrobras*,
    2016 WL 10771126 (E.D. Pa. Apr. 29, 2016) ................................................................ 12, 13

*Vanguard Specialized Funds v. VEREIT Inc.*,
    2016 WL 5858735 (D. Ariz. Oct. 3, 2016) .................................................................... 12, 13

*Wyndham Assocs. v. Bintliff*,
    398 F.2d 614 (2d Cir. 1968) ............................................................................................ 10

## Statutory Authorities

15 U.S.C. § 77p(b) ................................................................................................................ 12

15 U.S.C. § 78bb ........................................................................................................ 11, 12, 14

28 U.S.C. § 1391(c)(2) ........................................................................................................ 24

28 U.S.C. § 1404(a) .................................................................................................. *passim*

28 U.S.C. § 1407 ................................................................................................................ 13

## Rules and Regulations

Fed. R. Civ. P. 12(b)(1) ...................................................................................................... 12

Fed. R. Civ. P. 45(c)(1)(A) ............................................................................................ 21, 22

Plaintiffs Hound Partners Offshore Fund, LP, Hound Partners Long Master, LP, and Hound Partners Concentrated Master, LP (together, "Plaintiffs"), respectfully submit this Memorandum of Law in opposition to Defendants' Motion to Transfer Venue to the District of New Jersey.

## PRELIMINARY STATEMENT

Transfer may only be granted if the action could have been brought originally in the transferee court *and* where transfer would be in the interests of efficiency and justice. Here, neither requirement is met. Accordingly, Defendants' motion to transfer should be denied.

*First*, Defendants request relief that is not permissible: transfer to a court that does not have jurisdiction over the entirety of Plaintiffs' action. Defendants' motion acknowledges in passing "the threshold requirement" that the transferee court ***must*** have jurisdiction over Plaintiffs' action. However, Defendants fail to acknowledge that they propose a transferee court that does not have such jurisdiction.

Specifically, Plaintiffs' action includes common law claims over which Defendants have successfully argued the transferee court lacks jurisdiction. Defendants argued that similar opt-out actions against Valeant pending in the District of New Jersey before the Honorable Michael A. Shipp (Defendants' proposed transferee court) constituted "covered class actions" under the Securities Litigation Uniform Standards Act ("SLUSA") by virtue of being coordinated with other securities actions against Valeant pending before Judge Shipp. Defendants further argued that because those opt-out actions constituted "covered class actions," SLUSA required dismissal of all of the plaintiffs' common law claims. Judge Shipp agreed and dismissed the New Jersey common law negligent misrepresentation claims brought by numerous plaintiffs as preempted by SLUSA. As the Second, Third, and Ninth Circuits have recognized, dismissals under SLUSA of common law claims are for lack of subject matter jurisdiction. Thus, the District of New Jersey does not have jurisdiction over Plaintiffs' common law claims. Where, as here, the transferee

court does not have jurisdiction over all of Plaintiffs' claims, transfer **must** be denied under Section 1404(a).

*Second*, even if Defendants could somehow meet their burden of establishing that New Jersey is an alternative forum where this action "might have been brought"—and they cannot—they must also show, by clear and convincing evidence, that transfer would be in the interests of efficiency and justice.  Here, too, Defendants cannot meet their burden of showing through particularized facts that considerations of convenience and efficiency significantly outweigh the strong deference given to Plaintiffs' choice of forum in their home district.

Defendants spend the bulk of their brief arguing that transfer would be in the interests of efficiency and justice due to efficiencies gained from coordination with the 26 similar actions pending in New Jersey.  Defendants fail to recognize, however, that the very efficiencies they tout as warranting transfer will **only** be achieved if this case is **not** transferred.  Specifically, if the case is transferred, Plaintiffs will be forced to oppose any coordination with the other actions pending in New Jersey in order to minimize the risk that Plaintiffs' action will be considered a "covered class action" for purposes of SLUSA, which would result in the preemption of Plaintiffs' common law claims.  Accordingly, because SLUSA only applies to coordination between actions pending "in the same court," all the efficiencies Defendants promote can be achieved **only if** Plaintiffs' action remains outside the District of New Jersey.  Thus, Defendants' desired efficiencies weigh against transfer.

Further, the remaining factors do not support transfer.  *First*, the convenience of the witnesses does not support transfer because New York is more convenient for numerous witnesses, including not only Plaintiffs' representatives but also former Valeant employees with whom

Plaintiffs had direct communications during the relevant period.  Moreover, Defendants do not provide the level of detail required to show that transfer is more convenient for any witness.

*Second*, the convenience of the parties does not support transfer because, at most, transfer would be convenient for Defendants while inconvenient for Plaintiffs, all of which have their principal places of business in, and are managed from, New York.  Transfer is not warranted where it merely shifts the convenience from one party to the other.

*Third*, the presence of some relevant documents in New Jersey does not weigh in favor of transfer because, as numerous courts have recognized, the location of documents is largely irrelevant in the age of e-discovery.  Additionally, given that nearly all of Valeant's underwriters are located in New York, there will certainly be critical documents located in New York.

*Fourth*, Defendants' supposition that there may be unwilling witnesses outside this Court's jurisdiction does not weigh in favor of transfer because Defendants have failed to identify a ***single*** witness that is actually outside this Court's jurisdiction.  Indeed, even the two entities Defendants speculate may not cooperate with document requests are within this Court's jurisdiction.

*Fifth*, the relative means of the parties does not weigh in favor of transfer because Defendants include multi-national corporations that operate in New York and sophisticated individuals with New York residences and the means to litigate in New York.

*Sixth*, contrary to Defendants' suggestion, this Court is more than capable of presiding over an action involving both the New Jersey Racketeer Influenced and Corrupt Organizations Act and New Jersey common law negligent misrepresentation and fraudulent inducement claims.  These are types of claims over which courts in this District frequently preside.  Thus, the presence of these claims does not weigh against transfer.

*Finally*, Plaintiffs' choice of forum is entitled to significant deference because Plaintiffs have filed their action in the district of their principal places of business (*i.e.* their home).  Further, Plaintiffs are managed by a New York investment manager—Hound Partners, LLC ("Hound"), and all of the Hound employees responsible for Plaintiffs' investments work in New York.

In short, because the District of New Jersey is not a court where this action "might have been brought" and, separately, because transfer is not in the interests of efficiency and justice, Defendants' motion to transfer should be denied.

## FACTUAL BACKGROUND

### A.  <u>Factual Allegations</u>

Plaintiffs are three limited partnerships whose principal places of business are New York and which are operated by Hound out of Hound's New York office.  Compl. (ECF No. 1) ¶¶ 19-21; Declaration of Courtney E. K. Lewis ("Lewis Decl.") ¶¶ 4, 5, 7.  Throughout the relevant period, Hound has had complete investment authority over Plaintiffs, and Hound retains that authority through the present.  *See, e.g.*, Compl. ¶ 406; Lewis Decl. ¶ 5.  Plaintiffs assert claims under the federal securities laws, New Jersey common law, and New Jersey's Racketeer Influenced and Corruption Organizations Act ("RICO") alleging, among other things, that Defendants made misrepresentations and omissions of material fact concerning Valeant's business model, relationship with captive specialty pharmacies, and financial reporting.  Compl. ¶¶ 127-246.  These misrepresentations and omissions caused investors to suffer over $76 billion in losses and Plaintiffs alone to suffer hundreds of millions of dollars in losses.  Compl. ¶ 1.

As set forth in Plaintiffs' Complaint, Valeant and its management emphasized to investors that it was pursuing a "low-risk" business model, which maintained revenue growth primarily through sustainable and organic increases in sales volume.  Compl. ¶¶ 3, 145-50, 163-170, 176-77.  On numerous occasions, Defendants specifically stated that volume rather than price was

responsible for the majority of Valeant's growth.  *See, e.g.*, Compl. ¶ 52 ("[i]n terms of price [versus] volume, actually, volume was greater than price in terms of our growth"); *see also* Compl. ¶¶ 4, 11, 52, 61, 159, 161, and 162.  The truth was far different.

Contrary to Defendants' repeated representations, Valeant realized its revenue "growth" through unsustainable price gouging—not volume increases.  Compl. ¶¶ 6, 50-52, 56-64, 85-87, 111, 128-131.  As Defendants have since admitted, price increases were responsible for the majority of Valeant's growth for 12 out of 13 quarters from 2013 until 2016.  Compl. ¶ 369. Defendants also failed to disclose that Valeant had implemented its price gouging strategy through the use of illegal and deceptive conduct by Valeant's captive network of specialty pharmacies, most notably Philidor Rx Services, LLC ("Philidor").  Compl. ¶¶ 7, 64-105.  For example, Defendants failed to disclose that Valeant's secret network of specialty pharmacies maintained inflated prices and increased the already overstated volume by, among other things, modifying prescriptions to bar substitution away from Valeant's more expensive and medically undifferentiated branded drugs, automatically refilling Valeant prescriptions without request or medical justification, and circumventing licensing requirements through shell companies and misleading applications.  Compl. ¶¶ 8, 64-105.

Even as the truth of Valeant's deceptive and wrongful conduct began to emerge, Valeant misled investors regarding the extent and consequences of its wrongdoing.  For example, when Valeant was the subject of Congressional inquiries on price gouging in late September 2015, Valeant and its management told investors that "Valeant is well-positioned for strong organic growth, even assuming little to no price increases.  As we have stated many times, Valeant's core operating principles include a focus on volume growth."  Compl. ¶¶ 11, 272.  Moreover, when Valeant's fraudulent relationship with Philidor became apparent, Defendants stated that they

"continue[d] to be very comfortable with [Valeant's] 2016 EBITDA expectation," and even announced a new deal that supposedly would "more than replace[]" revenues lost as a result of Valeant shutting down Philidor.  Compl. ¶¶ 12, 301, 316.

On March 21, 2016, Valeant finally admitted that the company's former CFO, Defendant Howard Schiller, and former corporate controller, Defendant Tanya Carro, had engaged in "improper conduct," leading to a "tone at the top of the organization" that contributed to "improper revenue recognition."  Compl. ¶ 331.  Valeant also acknowledged that "one or more material weaknesses exist in the Company's internal control." Compl. ¶ 330.  As the full extent and consequences of Valeant's conduct became apparent through revised financial projections and the release of long-delayed financial results, Valeant's stock price fell from $262 per share as of August 5, 2015, to less than $25 per share in June 2016. Compl. ¶ 15.

### B. <u>Procedural History</u>

On October 22, 2015, a putative securities class action was filed against Valeant in the District of New Jersey.  *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 3:15-cv-07658 (D.N.J.) (the "Securities Class Action").   On June 24, 2016, the class plaintiffs filed a consolidated complaint that brought claims for violations of Sections 10(b) and 20(a) of the Exchange Act, Sections 11, 12, and 15 of the Securities Act related to a stock offering, and Section 12 of the Securities Act related to four separate debt offerings.  Consolidated Compl. (ECF No. 80), *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 3:15-cv-07658 (D.N.J. June 24, 2016).  From 2016 to the present, 26 Valeant opt-out cases have been filed in the District of New Jersey (together with the Securities Class Action, the "Other Valeant Actions").[1]

---

[1]   *See* Defs.' Mot. App. A (ECF No. 33-1) (listing 25 Valeant opt-out actions).  Following the submission of Defendants' Motion to Transfer, another opt-out action was filed on February 16,

To date, the judge presiding over all of the Other Valeant Actions—the Honorable Michael A. Shipp—has rendered three decisions, resolving motions to dismiss in the Class Action and two groups of opt-out actions.  As explained below, in those decisions Judge Shipp has sustained all claims, with the exception of certain New Jersey common law claims dismissed under SLUSA, and Section 12 claims related to certain debt offerings not at issue here.

Specifically, on September 13, 2016, Defendants moved to dismiss all claims brought by the Securities Class Action.  Mots. to Dismiss (ECF Nos. 164-169), *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 3:15-cv-07658 (D.N.J. Sept. 13, 2016).  On April 28, 2017, Judge Shipp upheld every claim in the class action other than those claims concerning Valeant debt offerings under Section 12 of the Securities Act, which are not at issue here.  *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, 2017 WL 1658822, at *9-15 (D.N.J. Apr. 28, 2017).

On June 16, 2017, Defendants moved to dismiss certain claims in the Other Valeant Actions, which Judge Shipp addressed in two separate decisions.  In *T. Rowe Price Growth Stock Fund, Inc. v. Valeant Pharm. Int'l, Inc.*, 2018 WL 395730, (D.N.J. Jan. 12, 2018), Judge Shipp addressed Defendants' motions related to four of the Other Valeant Actions.  Judge Shipp denied Defendants' motions, which moved to dismiss Plaintiffs' claims under Sections 10(b), 18(a), and 20(a) of the Exchange Act, in their entirety.  *Id.* at *3-7.  In *Discovery Glob. Citizens Master Fund, Ltd. v. Valeant Pharm. Int'l, Inc.*, 2018 WL 406046 (D.N.J. Jan. 12, 2018), Judge Shipp addressed another set of motion to dismiss briefing related to an additional six of the Other Valeant Actions. Judge Shipp denied these motions with respect to plaintiffs' claims under Sections 10(b), 18(a), and 20(a) of the Exchange Act.  Judge Shipp, however, granted dismissal of the negligent

---

2018, bringing the total number of opt-out cases in the District of New Jersey to 26.  *See Senzar Healthcare Master Fund, LP v. Valeant Pharm. Int'l, Inc.*, No. 3:18-cv-02286 (D.N.J.).

misrepresentation claims, holding that the actions, together with the Other Valeant Actions, constituted a "covered class action" under SLUSA, and thus all common law claims were preempted by SLUSA. *Id.* at *2, *5-*6.

On November 29, 2017, the class and opt-outs entered a stipulation agreeing to a stay of the proceedings in the District of New Jersey, excluding Valeant and PricewaterhouseCoopers LLP's document productions in response to the Securities Class Action plaintiffs' first request for documents, until the resolution of *United States v. Tanner*, No. 17-cr-61, (S.D.N.Y.). Stipulation and Order Regarding Partial Stay (ECF No. 291), *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 3:15-cv-07658 (D.N.J. Nov. 29, 2017) ("Partial Stay Order").

## ARGUMENT

### I. Defendants' Must Meet High A Threshold to Warrant Transfer

A plaintiff's choice of forum is ordinarily accorded great deference. *Mirror Worlds Techs., LLC v. Facebook, Inc.*, 2017 WL 5634127, at *3 (S.D.N.Y. Nov. 20, 2017) ("A plaintiff's choice of forum is generally entitled to considerable weight on a motion to transfer pursuant to § 1404(a)."); *Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 698 (S.D.N.Y. 2009) ("The Second Circuit has consistently held that 'a plaintiff's choice of forum is presumptively entitled to substantial deference.'") (quoting *Gross v. BBC*, 386 F.3d 224, 230 (2d Cir. 2004)). This is particularly true in cases, like this one, where the plaintiffs have sued in their home state, or a state in which plaintiffs are engaged in ongoing business activity. *Freeplay Music, LLC v. Gibson Brands, Inc.*, 195 F. Supp. 3d 613, 620 (S.D.N.Y. 2016) ("[T]he plaintiff's choice of forum is given substantial deference *especially* if it is the plaintiff's home state or where the plaintiff is engaged in ongoing business activity.") (emphasis added).

To overcome this deference, Defendants must "mak[e] out a strong case for transfer," and establish that transfer is warranted by "clear and convincing evidence." *N.Y. Marine & Gen. Ins.*

*Co. v. Lafarge N.A., Inc.*, 599 F.3d 102, 113-14 (2d Cir. 2010); *see also Hershman v. UnumProvident Corp.*, 658 F. Supp. 2d 598, 601 (S.D.N.Y. 2009) ("A plaintiff's choice of forum is entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer. . . .  To overcome this presumption in favor of plaintiff's choice of forum, defendant must make a clear showing that the proposed transferee district is a more convenient one, and that the interests of justice would be better served by a trial there.") (internal citations omitted).

To meet their high burden, Defendants must first "establish that . . . the action is one that 'might have been brought' in the proposed transferee district." *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 401 (S.D.N.Y. 2005) (quoting 28 § U.S.C. 1404(a)).  Failure to establish that the proposed transferee district would have jurisdiction over the action is fatal to any transfer motion.  *See* 28 U.S.C. § 1404(a); *see also AT&T. Co. v. Milgo Elec. Corp.*, 428 F. Supp. 50, 52 (S.D.N.Y. 1977) ("The threshold ***requirement*** for a change of venue . . . under Section 1404(a) is that [the transferee court] ***must*** be a district in which this action 'might have been brought.'  This means . . . subject matter jurisdiction ***must*** have existed there.") (emphasis added).  If—and ***only if***—they meet this burden, Defendants must then establish that the transfer "is appropriate given the convenience of parties and witnesses and in the interest of justice."  *Indian Harbor*, 419 F. Supp. 2d at 401.  As explained below, Defendants cannot show that the District of New Jersey would have had jurisdiction over all claims at issue in this action, and Defendants fail to show that transfer would be in the interests of efficiency and justice.  Accordingly, Defendants' motion must be denied.

**II.     Defendants Have Successfully Argued That The District of New Jersey Does Not Have Jurisdiction Over Plaintiffs' Common Law Claims**

An action is only permitted to be transferred to a District where the action "might have been brought" originally.  28 § U.S.C. 1404(a).  Defendants pay lip service to this requirement, Defs.' Mem. at 11, but engage in no real analysis.  An actual analysis reveals that, based on Defendants' own successful arguments in the Other Valeant Actions, the District of New Jersey is not a district where this action "might have been brought."

For purposes of Section 1404(a), "an action might have been brought in another forum if, at the time the action was originally filed, the transferee court would have had subject matter jurisdiction and personal jurisdiction over the defendants, and if venue would have been proper in the transferee court." *Cohen v. Maher*, 2017 WL 663553, at *7 (S.D.N.Y. Feb. 17, 2017) (citing *Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 401 (S.D.N.Y. 2004)).  Because Section 1404(a) only permits the transfer of actions and not claims, the transferee court must have subject-matter jurisdiction over ***all*** of the claims in order to permit transfer.  *See Crede CG III, Ltd. v. 22nd Century Grp., Inc.*, 2017 WL 280818, at *10 (S.D.N.Y. Jan. 20, 2017); *see also Mortg. Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*, 2015 WL 6516787, at *4 (S.D.N.Y. Oct. 28, 2015) *superseded on other grounds*, 2015 WL 9413881 (S.D.N.Y. Dec. 22, 2015) ("§ 1404(a) only authorizes courts to transfer an entire case."); *Ahmed v. T.J. Maxx Corp.*, 777 F. Supp. 2d 445, 450 (E.D.N.Y. 2011) ("Significantly, Section 1404 authorizes transfer 'only of the entire action and not of individual claims.'") (quoting *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968)).[2]

---

[2]   Any attempt by Defendants to rely on *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19 (1960), for the proposition that a transferee court need not have subject matter jurisdiction over the entire action would be misguided.  *Cont'l Grain* is the exception that proves the rule.  Courts have explained that the decision is "best understood as resting on the Court's refusal to take seriously, in a § 1404(a) context, the archaic admiralty fiction by which an action actually against the ship

Here—based on Defendants' own successful arguments in the District of New Jersey—the proposed transferee court would *not* have jurisdiction over Plaintiffs' common law claims. Specifically, Defendants have successfully argued that opt-out actions before Judge Shipp are "covered class actions" for purposes of SLUSA because they, along with the class action and other opt-out actions, constitute a "'group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which (I) damages are sought on behalf of more than 50 persons; and (II) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose,'" and SLUSA therefore requires the dismissal of any "covered" action's common law claims. Declaration of Jesse Bernstein ("Bernstein Decl."), Ex. 1, Omnibus Mem. of Law in Supp. of Valeant's Partial Mots. to Dismiss Pls.' Compls. (ECF No. 37-1), *Discovery Glob. Citizens Master Fund, Ltd.*, No. 3:16-cv-7321 at 14 (D.N.J. June 16, 2017) (quoting 15 U.S.C. § 78bb(f)(5)(B)).

The District of New Jersey accepted Defendants' argument, holding that because the opt-out actions "are proceeding as a 'covered class action' under [] SLUSA," the plaintiffs' negligent misrepresentation claims—the very claim Plaintiffs bring here in the Southern District of New York—"are preempted." *Discovery Glob. Citizens Master Fund, Ltd. v. Valeant Pharm. Int'l, Inc.*, 2018 WL 406046, at *6 (D.N.J. Jan. 12, 2018).[3] Courts have repeatedly held that dismissal under SLUSA is for lack of subject matter jurisdiction. *In re Lord Abbett Mut. Funds Fee Litig.*,

---

owner is pretended to be against the ship." *Buckeye Pennsauken Terminal LLC v. Dominique Trading Corp.*, 150 F. Supp. 3d 501, 507-08 (E.D. Pa. 2015) (citing 20 Charles Alan Wright & Mary Kay Kane, *Federal Practice and Procedure Deskbook* § 46 (2013)).

[3]   SLUSA cannot apply to Plaintiffs' claims so long as they are not in the District of New Jersey because, by its own terms, SLUSA only applies to actions "filed or pending in the same court." 15 U.S.C. § 78bb(f)(5)(B)(ii). Defendants effectively conceded this fact by not moving to dismiss Plaintiffs' common law claims under SLUSA. *See, e.g.,* Defs.' Mem. of Law in Support of Partial Mot. to Dismiss (ECF No. 48).

553 F.3d 248, 254 (3d Cir. 2009) ("SLUSA preemption is jurisdictional, and we review dismissals for lack of subject-matter jurisdiction *de novo.*"); *Fernandez v. UBS AG*, 222 F. Supp. 3d 358, 370, n.7 (S.D.N.Y. 2016) ("[T]he Second Circuit has suggested that an analysis of SLUSA's application is always driven by a jurisdictional inquiry even when not considered on remand and removal. . . . This Court analyzes the question as jurisdictional."); *Hampton v. Pac. Inv. Mgmt. Co. LLC*, 869 F.3d 844, 847 (9th Cir. 2017) ("We join with the Third Circuit in holding that dismissals under SLUSA are jurisdictional.").[4]   In other words, by Defendants' own successful argument, the District of New Jersey does not have subject matter jurisdiction over all of Plaintiffs' claims.

In circumstances where, as here, the transferee court does not have subject matter jurisdiction over plaintiffs' state-law claims due to SLUSA, Courts have held that transfer is not permitted. *Vanguard Specialized Funds v. VEREIT Inc.*, 2016 WL 5858735 (D. Ariz. Oct. 3, 2016); *Vanguard Int'l Equity Index Fund v. Petroleo Brasileiro S.A.-Petrobras*, 2016 WL 10771126 (E.D. Pa. Apr. 29, 2016).  In *Vanguard v. VEREIT*, the court denied the defendants' motion to transfer a securities opt-out action to the Southern District of New York—where 19 similar actions were pending—because "SLUSA would likely prohibit Plaintiffs from pursuing any state law claims in S.D.N.Y.," and therefore "th[e] case could not have been brought there."

---

[4]   *See also In re Kingate Mgmt. Ltd. Litig.*, 784 F.3d 128, 135, n.9 (2d Cir. 2015) ("Although the issue is not presented to us, we question whether a motion to dismiss pursuant to SLUSA is best considered under Rule 12(b)(6), as a motion to dismiss for failure to state a claim, or under Rule 12(b)(1) (and/or 12(h)(3)), as a motion to dismiss for lack of subject-matter jurisdiction.  A dismissal under SLUSA simply means that the lawsuit 'may [not] be maintained' *as a covered class action.*  15 U.S.C. §§ 77p(b), 78bb(f)(1).  It does not adjudicate against any plaintiff the right to recover on the claim.  A dismissal under SLUSA would not be with prejudice, barring a plaintiff from filing a new, non-covered action asserting the same claims against the same defendants."); *In re Kingate Mgmt. Ltd. Litig.*, 2016 WL 5339538, at *20 (S.D.N.Y. Sept. 21, 2016) ("The Court agrees that the appropriate lens for considering Defendants' Motion as to SLUSA is Rule 12(b)(1).  Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for dismissal of a claim when the federal court lacks subject matter jurisdiction.")

2016 WL 5858735, at *9 (D. Ariz. Oct. 3, 2016).  Similarly, in *Vanguard v. Petrobras*, the court denied a motion to transfer a securities opt-out action to the Southern District of New York because it "appear[ed] that Plaintiffs' underlying complaint, which include[d] *both* federal and state securities claims, could not have been brought in the Southern District of New York since that court . . . lacks jurisdiction over Plaintiffs' state law claims" due to SLUSA.  2016 WL 10771126, at *1 n.1.[5]

Accordingly, because the District of New Jersey's SLUSA ruling shows that it does not have subject matter jurisdiction over all of Plaintiffs' claims, the action could not have been brought in that court.  As a result, transfer under 1404(a) is unavailable and Defendants' motion must be denied.

## III.   Transfer Is Neither Convenient Nor Efficient

Even if Plaintiffs could have filed all of their claims in the District of New Jersey—which they could not given Defendants' own successful argument there—transfer would still be neither convenient nor efficient.

---

[5]   Any attempt by defendants to rely on the transfer orders in *In re Stanford Entities Sec. Litig.*, MDL No. 2099 or *In re Tremont Grp. Holdings, Inc. Sec. Litig.*, MDL No. 2052 for the proposition that transfers may be granted even where transfer could have the unintended consequence of converting the actions into a covered class action under SLUSA is misplaced.  *First*, unlike transfers under § 1404(a), transfers under 28 U.S.C. § 1407 do not require that the civil action be transferred "to any other district or division where it might have been brought."  *Second*, both panels dealt with the "remand" provision of SLUSA—not the preemption provision.  *See* Bernstein Decl., Ex. 2, Transfer Order (ECF No. 170), *In re Stanford Entities Sec. Litig.*, MDL No. 2099 (J.P.M.L. June 7, 2012), at 1; Bernstein Decl., Ex. 3, Transfer Order (ECF No. 137), *In re Tremont Grp. Holdings, Inc. Sec. Litig.*, MDL No. 2052 (J.P.M.L. Dec. 12, 2012), at 1 n.2.  Moreover, in *Stanford* there was no actual risk of SLUSA preemption because the Fifth Circuit had already ruled that the MDL would not be covered by SLUSA, a decision that the *Stanford* court acknowledged.  *See Roland v. Green*, 675 F.3d 503, 522 (5th Cir. 2012) (holding that the relevant defendants' conduct was "not sufficiently connected to such purchases or sales [of covered securities] to trigger SLUSA preclusion.");  Bernstein Decl. Ex. 3 at 1 (citing *Roland v. Green*, 675 F.3d 503, 522 (5th Cir. 2012)).

Defendants spend the bulk of their brief emphasizing efficiencies they claim would be achieved by coordinating this case with the Other Valeant Actions.  *See* Defs.' Mem. at 11-14. However, Defendants overlook that the very efficiencies they argue support transfer will only be achieved if transfer is denied.  As explained below, transfer will necessitate the absence of coordination with the Other Valeant Actions so as to avoid SLUSA preemption of Plaintiffs' New Jersey common law claims.[6]

Specifically, because SLUSA preempts state law claims of coordinated actions if they are "pending in the same court," 15 U.S.C. § 78bb(f)(5)(B)(ii), Plaintiffs will need to oppose coordination if transferred to the District of New Jersey to preserve their state law claims.  By contrast, if the action is not transferred, Plaintiff may pursue all of their claims, SLUSA will not apply, and this Court can use its inherent power to manage discovery, including by permitting the type of coordination Defendants promote.[7]  For example, if Defendants would prefer to produce

---

[6]   Moreover, transfer would not decrease the number of fora in which litigation proceeds.  If Plaintiffs' action is transferred to the District of New Jersey and coordinated with the Other Valeant Actions over Plaintiffs' objection, and Plaintiffs' common law claims were subsequently dismissed due to SLUSA, Plaintiffs would seek to refile those claims in state court.  Thus, transfer would not decrease litigation because Plaintiffs would be litigating similar actions in both state and federal court.

[7]   Any attempt by Defendants to argue that permitting coordination with the Other Valeant Actions while avoiding SLUSA preclusion is contrary to SLUSA's purpose and this Court's decision in *In re WorldCom, Inc. Sec. Litig.*, 308 F. Supp. 2d 236 (S.D.N.Y. 2004) would be misguided.  First, permitting Plaintiffs to pursue their common law claims is consistent with the intent of SLUSA to preserve all claims for individual actions.  *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 87 (2006) (SLUSA "does not deny any individual plaintiff, or indeed any group of fewer than 50 plaintiffs, the right to enforce any state-law cause of action that may exist."); *see also* H.R. Conf. Rep. 105-803, 2 ("in order to prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives of the [PSLRA], it is appropriate to enact national standards for securities class action lawsuits involving nationally traded securities, while . . . not changing the current treatment of individual lawsuits.").  Second, coordination without implicating SLUSA is consistent with the plain text of SLUSA, which only bars state law claims brought by plaintiffs coordinating with actions "in the same court." 15 U.S.C. § 78bb(f)(5)(B)(ii).  Third, Defendants are the ones who have effectively requested coordination.  Finally, *WorldCom* does not aid Defendants because: (i) this Court in *WorldCom* expressly

in this case all document discovery produced in the Other Valeant Actions, rather than negotiate entirely separate discovery here, Plaintiffs would be willing to accept that compromise (subject to limited requests relating to unique issues involving Plaintiffs).  Similarly, Plaintiffs are willing to largely coordinate deposition practice with the Other Valeant Actions.  Assuming such efficiencies, Plaintiffs anticipate needing significantly less time than would otherwise be warranted for a case of this complexity and magnitude.

Courts frequently decline transfer where these types of efficiencies are available without transfer.  *See, e.g.*, *Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 306 B.R. 746, 752 (S.D.N.Y. 2004) ("Much of the efficiency to be gained from a coordination of discovery tasks can be effected by the conduct of the parties, without the need for a transfer."); *Bukhari v. Deloitte & Touche LLP*, 2012 WL 5904815, at *6 (S.D.N.Y. Nov. 26, 2012) (denying motion to transfer and expressing hope that "counsel in these cases will coordinate among themselves so as to avoid needless duplication in the area of discovery, in particular."); *see also In re Petrobras Sec. Litig.*, 222 F. Supp. 3d 1345, 1346 (J.P.M.L. 2016) (declining to transfer securities opt-out action to district where 28 similar securities actions were pending because "alternatives to transfer—in particular, voluntary cooperation and coordination among the parties and the involved courts—are both feasible and preferable to centralization in this instance."); Manual for Complex Litigation, Fourth, § 20.14 (2004) (noting that "[e]ven when related cases pending in different districts cannot be transferred to a single district, judges can coordinate proceedings in their respective courts to avoid or minimize duplicative activity and conflicts"). However, the very efficiencies that Defendants seek (and to which Plaintiffs would not object) are

---

acknowledged the "Filed or Pending in the Same Court" requirement, and (ii) there the plaintiffs did not oppose the consolidation before the "Same Court" that barred their state law claims (unlike Plaintiffs here, who would oppose such consolidation).  *WorldCom*, 308 F. Supp. 2d at 245-247.

possible only if the Court denies Defendants' transfer motion.  Absent such denial, Plaintiffs will need to oppose *any* coordination with the Other Valeant Actions in order to minimize the risk that SLUSA would preempt Plaintiffs' common law claims.

Accordingly, the efficiencies weigh against transfer.

## IV.    The Additional Factors Either Weigh Against Transfer Or Are Neutral

### A.    Convenience of the Witnesses Weighs Against Transfer

As a threshold matter, Defendants have failed to meet their burden of showing that Trenton, New Jersey is more convenient for any witnesses than the Southern District of New York. Precedent requires that Defendants submit an affidavit "containing detailed factual statements explaining why the transferee forum is more convenient, including the potential principal witnesses expected to be called and a general statement of the substance of their testimony." *Mazuma Holding Corp. v. Bethke*, 1 F. Supp. 3d 6, 30 (E.D.N.Y. 2014); *see also In re Glob. Cash Access Holdings, Inc. Sec. Litig.*, 2008 WL 4344531, at *4 (S.D.N.Y. Sept. 18, 2008) (same); *Cohn v. Metro. Life Ins., Co.*, 2007 WL 1573874, at *4 (S.D.N.Y. May 31, 2007) (denying transfer where defendants "failed to identify any key witness and there [wa]s no proffer of any witness' testimony"); *Blass v. Capital Int'l Sec. Grp.*, 2001 WL 301137, at *4 (E.D.N.Y. Mar. 23, 2001) (requiring "affidavits containing detailed factual statements relevant to the factors . . . that the court should consider on a motion to transfer").  Defendants have submitted inadequate support for the assertion that New Jersey is more convenient for the witnesses, only identifying three potential witnesses, providing conclusory and vague statements concerning the relevant factors, and failing to describe the substance of the witnesses' testimony.  *See* Decl. of Linda LaGorga (ECF No. 34) at ¶ 11.  Such "[v]ague generalizations and failure to clearly specify the key witnesses to be called . . . are an insufficient basis upon which to grant a change of venue under § 1404(a)." *Orb Factory, Ltd. v. Design Sci. Toys, Ltd.*, 6 F. Supp. 2d 203, 208-09 (S.D.N.Y. 1998).  The Court should reject

any attempt by Defendants to correct their inadequate submission on reply. *Glob. Cash,* 2008 WL 4344531, at *4 ("Nor will the Court consider the witness list and descriptions set forth for the first time in the defendants' reply brief."); *Hummingbird USA, Inc. v. Tex. Guaranteed Student Loan Corp.*, 2007 WL 163111, at *2 (S.D.N.Y. Jan. 24, 2007) (same).[8]

Moreover, it is far from clear that the three witnesses identified by Defendants—none of whom are alleged to have made any misstatements in Plaintiffs' Complaint—would ever be called to testify. Defendants also conspicuously fail to mention Laurie Little, Valeant's former head of investor relations, as a potential witness despite the fact that she had numerous in-person communications with Plaintiffs. Compl. ¶¶ 513-14. Ms. Little's current employment appears to be in this District, making this a convenient forum for her.[9] And, as set forth below, New York is more convenient for many other witnesses likely to be called for three reasons.

*First*, Plaintiffs' principal places of business are in New York. Lewis Decl. ¶ 7. Similarly, Plaintiffs' investment manager throughout the relevant period, Hound, was and is headquartered in New York. *Id.* at ¶ 5. Further, the principal Hound employees responsible for Plaintiffs' purchase of Valeant stock were based in Hound's New York office. *Id.* All of those individuals continue to work in New York. *Id.*

*Second*, numerous Defendants are headquartered in New York, including Deutsche Bank (the lead underwriter for the relevant Valeant stock offering), six other underwriter defendants,

---

[8] Even if New Jersey were more convenient for Defendants' party witnesses, this Court has expressly stated that the convenience of Defendants' party witnesses is immaterial in the context of Securities Exchange Act claims. *In re Geopharma, Inc.*, 2005 WL 1123883, at *2 (S.D.N.Y. May 11, 2005) (noting "convenience of defendants' party witnesses cannot operate to eliminate section 27's explicit provision for jurisdiction wherever any violation occurred").

[9] *See* Laurie W. Little, LinkedIn, https://www.linkedin.com/in/laurie-w-little-218337/ (last visited Mar. 7, 2018) (noting current place of employment in the "Greater New York City Area" as a Senior Vice President of "The Piacente Group"); *see also* Contact: The Piacente Group, http://thepiacentegroup.com/contact/ (last visited Mar. 7, 2018) (listing address in Manhattan).

and PwC (Valeant's auditor).  *See* Compl. ¶¶ 40 (Auditor Defendant), 42 (Underwriter Defendants).[10]  It is likely that their employees and former employees will be relevant witnesses. Thus, this Court is more convenient for those witnesses (and those Defendants do not contend otherwise).

*Third*, it is likely that securities analysts will be called to testify in this action regarding the materiality of Defendants' numerous misstatements and omissions, and the market's reaction to those misstatements and omissions.  Those securities analysts will likely reside or be employed in New York.[11]  Courts have recognized that the presence of such analysts in New York weighs against transfer from this Court.  *See Geopharma*, 2005 WL 1123883, at *2 (finding that the convenience of witnesses did not favor transfer where "analysts and securities commentators [are] located in New York.").

*Finally*, there are likely to be witnesses outside of both New York and New Jersey.  For those witnesses, New York—which is a transportation hub—is presumably more convenient than Trenton, New Jersey.

---

[10]    Registration data from the Financial Industry Regulatory Authority ("FINRA") shows that seven of the eight Underwriter Defendants have their headquarters in New York.  *See Deutsche Bank Securities Inc.*, https://brokercheck.finra.org/firm/summary/2525 (last visited Mar. 7, 2018); *MUFG Securities Americas Inc.*, https://brokercheck.finra.org/firm/summary/19685 (last visited Mar. 7, 2018); *DNB Markets Inc.*, https://brokercheck.finra.org/firm/summary/127605 (last visited Mar. 7, 2018); *MSBC Securities (USA) Inc.*, https://brokercheck.finra.org/firm/summary/19585 (last visited Mar. 7, 2018); *Barclays Capital Inc.*, https://brokercheck.finra.org/firm/summary/19714 (last visited Mar. 7, 2018); *Morgan Stanley & Co. LLC*, https://brokercheck.finra.org/firm/summary/8209 (last visited Mar. 7, 2018); *RBC Capital Markets, LLC*, https://brokercheck.finra.org/firm/summary/31194 (last visited Mar. 7, 2018).

[11]    For example, the Wells Fargo analyst discussed at Compl. ¶ 322 appears to be based in New York City.  *See* David Maris, LinkedIn, https://www.linkedin.com/in/david-maris-a2143640 (last visited March 7, 2018) (noting current place of employment in the "Greater New York City Area" as Equity Research Analyst, Managing Director at Wells Fargo).

### B.    Convenience of the Parties Weighs Against Transfer

In arguing that the convenience of the parties supports transfer, Defendants completely neglect to consider the convenience of Plaintiffs.  As discussed above, this District is Plaintiffs' principal place of business.  All of the principal decision makers for Plaintiffs' investment in Valeant work within this District.  Lewis Decl. ¶ 5.  Thus, there is no question that this District is convenient for Plaintiffs.  Accordingly, a transfer to the District of New Jersey will, at most, "merely shift the inconvenience from one party to the other."  *Eagle Auto Mall Corp. v. Chrysler Grp., LLC*, 760 F. Supp. 2d 421, 425 (S.D.N.Y. 2011).  Under such circumstances, "plaintiff's choice of forum will not to be disturbed."  *Id.*; *Calabrese v. Teoco Corp.*, 637 F. Supp. 2d 160, 163 (S.D.N.Y. 2009) (same).

Moreover, Defendants have not provided any information supporting their contention that transfer would be more convenient for Defendants and their respective witnesses.  Defendants merely state that Valeant (which as a corporation will obviously not be travelling anywhere) is headquartered in New Jersey and that the relevant individuals *previously* worked out of Valeant's New Jersey office.  Defendants notably fail to: (i) state where those individuals currently reside and/or work, and (ii) set forth any facts suggesting that New York would be an inconvenient forum for those individuals.

In addition, Defendants request that this Court not consider the convenience of the Underwriter Defendants or the Auditor Defendant.  *See* Defs.' Mem. at 17.  As discussed above, the vast majority of the Underwriter Defendants and the Auditor Defendant (PwC) have their headquarters in the Southern District of New York, and therefore New York is the logical forum.  Although Defendants suggest that the fact that these entities "support [their] motion to transfer" renders their residencies irrelevant, as explained above, this Court must still consider the convenience of these parties' former and current employees.  *See Glob. Cash*, 2008 WL 4344531,

at *4 n.8 (noting that the court "must still consider the convenience of non-party witnesses" including the "current and former employees" of the underwriter defendants who supported the motion for transfer). Defendants have not adduced any facts establishing that New Jersey is a more convenient forum than New York for the entity Defendants' former and current employees.

In short, Defendants have not met their burden to establish that transfer would be more convenient for any Defendant, let alone the entity Defendants' former and current employees. Accordingly, this factor weighs against transfer or, at most, is neutral.

### C.     The Location of the Documents Does Not Support Transfer

As Defendants acknowledge, the location of the documents is barely a consideration in the age of electronic discovery. *See, e.g.*, *Martignago v. Merrill Lynch & Co.*, 2012 WL 112246, at *7 (S.D.N.Y. Jan. 12, 2012) ("The location of documentary evidence is typically considered a neutral factor in the transfer analysis"); *Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Lafarge N. Am. Inc.*, 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007) (same). Moreover, as mentioned above (n. 10), seven of the eight underwriter defendants and PwC are in New York. Thus, many relevant documents are located in New York. This factor does not weigh in favor of transfer.

### D.     The Locus of Operative Facts Does Not Support Transfer

Defendants correctly argue that the majority of the events giving rise to this action occurred in New Jersey, However, Defendants wrongly downplay their fraud's connection to New York. *First*, though Defendants focus entirely on the misrepresentations made from Valeant's headquarters, Plaintiffs allege numerous misrepresentations made in New York. Compl. ¶¶ 159, 162.[12] *Second*, many of the misrepresentations were received by Hound—Plaintiffs' investment

---

[12]   *See* Valeant Pharmaceuticals to Present at the Sanford C. Bernstein Thirtieth Annual Strategic Decisions Conference 2014, http://ir.valeant.com/news-releases/2014/23-05-2014 (last visited

manager—in New York.  Compl. ¶ 409; Lewis Decl. ¶ 5.  *Third*, Plaintiffs' investment decisions were typically made from New York.  Lewis Decl. ¶¶ 5, 6.  *Finally*, both Andrew Davenport and Gary Tanner were indicted for their misconduct at Philidor in connection with Valeant by the U.S. Attorneys' Office for the Southern District of New York and their case is pending in this District. *United States v. Tanner*, No. 17-cr-61, (S.D.N.Y.).  In short, New York has a strong connection with the facts at issue in this case.

These facts illustrate why Defendants' reliance (Defs.' Mem. at 19, 20, 22) on *SEC v. Kearns*, 2009 WL 2030235 (S.D.N.Y. July 14, 2009), is misplaced.  There, the SEC alleged that there were "some" New York victims, *id.* at *1, and the "only operative fact mentioned in the SEC's complaint that took place [in the Southern District] was that MedQuist's shares were traded on the NASDAQ," *id.* at *3.  Here, by contrast, the Defendants made misrepresentations in New York, each Plaintiffs' principal place of business is in New York, and each Plaintiff is managed by a New York-based investment manager, which made investment decisions in New York. Accordingly, this factor is neutral.

### E.   Defendants Have Not Identified a Single Unwilling Witness

In contrast to the "clear and convincing" proof Defendants must put forward to warrant transfer, Defendants merely speculate that there *may* be unwilling witnesses outside of this Court's jurisdiction because two entities—both within this Court's jurisdiction—have not complied with discovery requests before the New Jersey District Court to date.  This does not favor transfer.

First, Defendants have not identified a single witness who is outside this Court's jurisdiction.  *See* Fed. R. Civ. P. 45(c)(1)(A) (limiting the subpoena power to 100 miles "of where

---

Mar. 7, 2018) (noting that the 2014 Strategic Decisions Conference was "held at The Waldorf Astoria in New York").

the person resides, is employed, or regularly transacts business in person"); *see also Cohn v. Metro. Life Ins., Co.*, 2007 WL 1573874, at *5 (S.D.N.Y. May 31, 2007) (denying transfer where "Defendants have not identified any specific non-party witnesses they may call who reside outside of the Court's subpoena power."). Second, to the extent that Defendants are relying on the locations of Philidor and Cambria Central Fill, *see* Defs.' Mem. at 20, both are within 100 miles of this Court.[13] Accordingly, this factor does not weigh in favor of transfer.

### F.  The Relative Means of the Parties Does Not Support Transfer

Defendants do not contend that the relative means of the parties supports transfer, because they cannot. The Defendants include Valeant, Deutsche Bank, Goldman Sachs, and sophisticated individuals. Thus, this is not a situation "[w]here a disparity exists between the means of the parties." *Martignago*, 2012 WL 112246, at *9; *Atl. Recording Corp.*, 603 F. Supp. 2d at 697 ("When both parties are corporations, however, this factor is given little weight.") (internal citations omitted). At most, Defendants appear to argue that this factor should be neutral because Plaintiffs have the means to litigate this action in New Jersey. Accordingly, this factor does not weigh in favor of transfer.

### G.  This Court is More Than Competent to Hear The New Jersey Law Claims

Defendants' suggestion that this Court is not adequately familiar with the subject matter at issue is misplaced. Courts in this Circuit rightfully find that they are perfectly capable of applying another state's laws—as they frequently do in cases under diversity jurisdiction—where the

---

[13]   *See Horsham, PA vs. New York, NY*, Wolfram|Alpha, https://www.wolframalpha.com/input/ ?i=horsham,+pa+versus+new+york,+ny (last visited Mar. 7, 2018) (straight-line distance between Horsham, PA and New York, NY is 71 miles); *Philadelphia, PA vs. New York, NY*, Wolfram|Alpha, http://www.wolframalpha.com/input/?i=Philadelphia,+PA+vs.+New+York, +NY (last visited Mar. 7, 2018) (straight-line distance between Philadelphia, PA and New York, NY is 78 miles).

relevant state law "presents no complex legal questions and has not been shown to be unclear, unsettled or difficult." *About.com, Inc. v. Aptimus, Inc.*, 2001 WL 503251, at *3 (S.D.N.Y. May 11, 2001) (internal citations omitted); *see also Atl. Marine Const. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 134 S.Ct. 568, 584 (2013) ("[F]ederal judges routinely apply the law of a State other than the State in which they sit.").

The claims at issue here are ones over which courts in this District have presided and none of the claims present "complex" issues of State law that could justify transfer. *See, e.g.*, *Coraud LLC v. Kidville Franchise Co., LLC*, 121 F. Supp. 3d 387, 397 (S.D.N.Y. 2015) (applying New Jersey law to a negligent misrepresentation claim); *Ebusinessware, Inc. v. Tech. Servs. Grp. Wealth Mgmt. Sols., LLC*, 2009 WL 5179535, at *12 (S.D.N.Y. Dec. 29, 2009) (same); *Thomas v. JPMorgan Chase & Co.*, 811 F. Supp. 2d 781, 799 (S.D.N.Y. 2011) (applying New Jersey law to negligent misrepresentation and fraud claims); *Costigan v. CitiMortgage, Inc.*, 2011 WL 3370397, at *4 (S.D.N.Y. Aug. 2, 2011) (same); *In re Refco Inc. Sec. Litig.*, 826 F. Supp. 2d 478, 531 (S.D.N.Y. 2011) (presiding over New Jersey RICO claim).[14]   Accordingly, this factor does not support transfer.

### H.   Plaintiffs' Choice of Forum Should be Afforded Great Deference

Defendants appear to concede—as they must—that ordinarily a Plaintiffs' choice of forum should be afforded great deference.  Defs.' Mem. at 22.  *See Hershman v. UnumProvident Corp.*, 658 F. Supp. 2d 598, 601 (S.D.N.Y. 2009) ("A plaintiff's choice of forum is entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer.")

---

[14]   Given the frequency with which federal courts apply the laws of other states, it is unsurprising that "[f]amiliarity with the governing law as a factor in determining transfer is generally given little weight in federal courts."  *Mastr Asset Backed Sec. Tr. 2007-WMC1, ex rel. U.S. Bank Nat. Ass'n v. WMC Mortg. LLC*, 880 F. Supp. 2d 418, 423 (S.D.N.Y. 2012) (internal citations omitted).

(internal citations omitted); *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 107 (2d Cir. 2006) ("[Plaintiff] chose New York as its forum, a decision that is given great weight.").   Indeed, plaintiffs are entitled to even greater deference where—as here—the chosen forum "is the plaintiff's home state or where the plaintiff is engaged in ongoing business activity."  *Freeplay Music*, 195 F. Supp. 3d at 620.

Defendants erroneously suggest that this district is not Plaintiffs' home because the Plaintiff funds are incorporated in the Cayman Islands.  Defs.' Mem. at 22.  Defendants ignore that a plaintiff's home is determined by its principal place of business, *not* its place of incorporation. *Robb Evans & Assocs. LLC v. Sun Am. Life Ins.*, 2012 WL 488257, at *3 (S.D.N.Y. Feb. 14, 2012) ("Courts within the Second Circuit have consistently held that a business entity's residence is determined by its principal place of business."); *FSI Grp. v. First Fed. Sav. & Loan Ass'n*, 502 F. Supp. 356, 357 (S.D.N.Y. 1980) ("[F]or purposes of determining venue, the 'residence' of a limited partnership . . . is the partnership's principal place of business."); *see also* 28 U.S.C. § 1391(c)(2).   A "principal place of business" is the "actual center of direction, control, and coordination, *i.e.*, the 'nerve center'" of the Plaintiffs.  *Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010).  Here, that is New York.  Specifically, as explained above, Plaintiffs' operations were all directed, controlled, and coordinated out of New York, as the investment decisions were typically made from New York and all trades executed from the Manhattan office of the Plaintiffs' investment manager, Hound.   Lewis Decl. ¶¶ 5, 6.  Similarly, *all* of the Hound employees responsible for Plaintiffs' investments in Valeant worked out of Hound's Manhattan office, and all of the employees currently responsible for Plaintiffs' investments work out of Hound's Manhattan office.  *Id.*

Further, two of the Plaintiffs—Hound Partners Long Master, LP and Hound Partners Concentrated Master, LP—explicitly designated New York as their principal place of business in their partnership agreements.  Lewis Decl. ¶ 7; Bernstein Decl. Exs. 4, 5.  This also demonstrates why Plaintiffs are entitled to a strong presumption in favor of their chosen forum.  *See Sierra Club v. Van Antwerp*, 523 F. Supp. 2d 5, 11 (D.D.C. 2007) (affording "great deference to plaintiffs' choice of forum" where "at least one [of the plaintiffs] . . . ha[d] its headquarters in the [forum]").

Accordingly, because this District is Plaintiffs' home district, a district in which Plaintiffs are actively engaged in business activity, and a district in which many of the acts giving rise to this action took place, Plaintiffs' choice of forum is to be afforded great deference.  Therefore, this factor weighs strongly against transfer.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to transfer venue to the District of New Jersey should be denied.

DATED:   New York, New York          QUINN EMANUEL URQUHART &
              March 7, 2018                        SULLIVAN, LLP


                                                  By: *s/ Chad Johnson*
                                                       Chad Johnson
                                                       Steig Olson
                                                       Rollo Baker
                                                       Kathryn Bonacorsi
                                                       Jesse Bernstein

                                                       51 Madison Avenue, 22nd Floor
                                                       New York, New York  10010
                                                       (212) 849–7000

                                                       *Attorneys for Plaintiffs*